[Civ. No. 917.   Second Appellate District.—March 24, 1911.]

CITY OF SANTA MONICA, a Municipal Corporation, Respondent, v. LOS ANGELES COUNTY, a Municipal Corporation, Appellant.

TAXATION—REAL PROPERTY ACQUIRED BY CITY AFTER MARCH 1ST— LIABILITY FOR STATE AND COUNTY TAXES.—A city which acquired real property after March 1, 1903, became liable for state and county taxes subsequently levied and assessed thereupon for that year.

ID.—LIEN FOR TAXES ON MARCH 1ST.—The lien for the taxes levied and assessed for that year attached upon such real property on March 1st of that year, regardless of its then ownership, and the subsequent acquisition of title thereto by the city could not affect such lien.

ID.—EFFECT OF SUBSEQUENT LEVY AND ASSESSMENT—STEPS FOR ENFORCEMENT OF LIEN—RELATION.—The subsequent fixation of the

amount of the lien, through levy and assessment, was but a step necessary for the enforcement of the established lien. When these acts were performed, they, by relation, became part of the established lien, and were secured thereby.

Id.—Regularity of Subsequent Proceedings not Material.—In the matter of taxation, the obligation imposed upon the property is such as to render it liable for the tax thereafter levied and assessed, which is an immediate liability created, even though there may be an omission or irregularity in subsequent proceedings affecting the levy and assessment. These may in a subsequent year be corrected, and the liability enforced.

Id.—Time of Acquisition by City Subject to Unpaid Assessment and Levy.—The city acquiring the title after March 1st before the levy and assessment occupies no different position than it would have occupied if it had acquired the property after the levy and assessment had been made and equalized, in which event the property so acquired was subject to the lien on account of the taxes levied and unpaid.

Id.—Lien for Taxes on City Property not Merged in Title of City. A city by its organization is not vested with any power to aid the state or county in the levy or collection of taxes for state or county purposes; and the bare acquisition of property by a city which is subject to a lien for state or county purposes, did not carry with it any interest or estate in the lien thereby created which could be merged in the title of the city.

Id.—Less Estate not Vested in City to Support Merger.—There was no vesting of any lesser estate in the title acquired by the city subject to state or county taxes held in the same right or otherwise through which any merger of the lien of the state or county could be said to result to the city. When the city acquired the land it was subject to the existing lien of the taxes to the same extent as would be a private purchaser thereof.

Id.—Payment of Taxes to County Under Protest—Improper Judgment for Recovery — Reversal—Immaterial Question—Power to Prevent Sale.—The fact that the city paid to the county under protest the amount of the taxes assessed for county purposes cannot entitle the city to recover the same from the county, and a judgment for such recovery must be reversed, regardless of any question of inability of the city to prevent a sale by payment of the taxes, a sale having been obviated by such payment.

APPEAL from a judgment of the Superior Court of Los Angeles County, N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

J. D. Fredericks, District Attorney, and Hartley Shaw, Chief Deputy, for Appellant.

H. W. Taft, City Attorney of Santa Monica, and Tanner, Taft & Odell, for Respondent.

ALLEN, P. J.—This action was brought by the city of Santa Monica against the county of Los Angeles to recover the amount of taxes levied and assessed in September, 1903, against certain real property acquired by said city after March 1st of that year, but before such assessment was levied. The city paid such taxes under protest, and judgment was rendered in its favor against the county for the recovery of the amount so paid, from which judgment the county appeals.

The sole question involved is as to the operative effect of such levy of taxes made under the circumstances of this case. It is appellant's contention that the lien for the taxes of 1903 attached on the first Monday of March of that year, and the subsequent fixation of the amount, through levy and assessment, was but a step necessary for the enforcement of the already established lien. This upon the authority of *Couts v. Cornell,* 147 Cal. 564, [109 Am. St. Rep. 168, 82 Pac. 194], and the cases there cited. In a construction of section 2884, Civil Code, which provides that a lien may be created by contract to take immediate effect as security for an obligation not then in existence, our supreme court, in *Tapia v. Demartini,* 77 Cal. 386, [11 Am. St. Rep. 288, 19 Pac. 641], has said that a mortgage covering future advancements, as against subsequent encumbrancers, becomes a lien for the whole sum advanced from the time of its execution, although the right to enforce the collection thereof can only arise upon each advancement being made. The analogy lies in this, that a lien declared by positive statute is not dependent for its existence upon subsequent acts requisite to its enforcement. When these acts are performed, they, by relation, become part of the established lien and are secured thereby. In the matter of taxation, the obligation imposed upon the property is such as to render it liable for the tax thereafter levied and assessed, which is an immediate liability created, even though there be an omission or irregularity in subsequent proceedings

affecting the levy and assessment.   These may in a subsequent year be corrected and the liability enforced.   (Pol. Code, sec. 3806.)   In our opinion, the city in the case under consideration occupies no position different from that which it would have occupied had it acquired the property after the levy and assessment had been made and equalized, in which event the property so acquired was subject to the lien on account of the taxes levied and unpaid, unless there is merit in respondent's contention that the lien of the county and state merged in the title acquired by the municipality, which is an integral part of the state government.   "A municipal corporation is but a branch of the state government, and is established for the purpose of aiding the legislature in making provision for the wants and welfare of the public within the territory for which it is organized, and it is for the legislature to determine the extent to which it will confer upon such corporation any power to aid it in the discharge of the obligation which the constitution has imposed upon itself."   (*Chico H. S. Board* v. *Supervisors,* 118 Cal. 120, [50 Pac. 275].   This is true as to counties and their government. Under the law, counties are authorized to levy taxes for certain school and county purposes, and when collected the taxes are so applied; with reference to such matters the city may not exercise any right.   Plaintiff by its organization as a part of the state government has not been vested with power to aid the state in connection with county government or school government under the control of the county authorities. The taxes so levied upon the property were levied and assessed by the county for purposes within its jurisdiction.   The bare acquisition of the premises upon which the tax levy attached did not carry with it any interest or estate in the lien therein created for county purposes.   There was, therefore, no vesting of any lesser estate, held in the same right or otherwise, through which a merger could be said to result.   The plaintiff, when it acquired this land, took it subject to the lien for county purposes to the same extent as would a private purchaser.

The question presented as to the inability of the city to prevent a sale through payment of the taxes need not be

considered, in view of the fact that in this case the funds have been provided and a sale thereby obviated.

The judgment should be reversed, and it is so ordered.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 23, 1911.