[Civ. No. 1134.   Fourth Appellate District.—May 28, 1935.]

POMONA COLLEGE (a Corporation), Plaintiff and Respondent, v. LEAH DUNN et al., Defendants and Respondents; RUSSELL B. SEYMOUR, as Trustee, etc., Defendant and Appellant.

228

Schweitzer & Hutton, Dell A. Schweitzer and Edward H. Gaylord for Plaintiff and Respondent.

Goodspeed, Pendell & McGuire for Defendant and Appellant and for Defendant and Respondent Sligh Furniture Company.

JENNINGS, J. — This is an appeal by the defendant Russell B. Seymour, as trustee in bankruptcy of the estate of Fred B. Dunn, a bankrupt, from a portion of the judgment and decree of foreclosure made and entered in an action instituted by the plaintiff for the purpose of foreclosing the

lien of a mortgage executed by Fred B. Dunn and his wife in favor of plaintiff Pomona College, a corporation. That portion of the judgment from which the appeal has been perfected decrees that, if, upon sale of the mortgaged premises, the proceeds thereof are insufficient to pay the amount found due to plaintiff under its mortgage, there shall be applied toward the satisfaction of such deficiency the sum of $5,568 or such part thereof as may be necessary, which sum is in the possession of the defendant Security First National Bank of Los Angeles and is declared to be a part of the security of plaintiff's mortgage on which sum it is adjudged the plaintiff has a lien by virtue of its mortgage.

The record herein shows the existence of the following facts which are material to this appeal: On September 28, 1925, Fred B. Dunn and his wife Leah Dunn executed a promissory note in the amount of $10,000 in favor of plaintiff Pomona College. The note was payable three years after its date and the payment thereof was secured by a mortgage on real property fronting on Temple Street in the city of Los Angeles which was then owned by the Dunns. On August 8, 1927, the city of Los Angeles commenced an action in the Superior Court of Los Angeles County for the purpose of condemning a portion of the real property which was encumbered by the lien of the aforesaid mortgage. The mortgagee, Pomona College, was joined as a party defendant in this action, was duly served with process therein, and defaulted in appearance. The complaint in this action alleged on information and belief that the defendant Pomona College claimed an interest in the parcel of land sought to be condemned by virtue of the mortgage and further alleged a lack of sufficient knowledge, information or belief to enable the plaintiff to state whether said mortgage constituted a valid and subsisting lien upon the land. Wherefore, basing its denial upon the lack of such information, the plaintiff denied that said defendant had any interest in the said land. The prayer of the complaint was that defendants be required to set forth the nature and extent of their several estates or interests in the land, that such estates or interests may be adjudicated and determined, that the value of each and every such separate estate or interest in the land and the damage accruing to the respective owners thereof by reason of the condemnation in the construction of the improvement in the

manner proposed by the plaintiff be ascertained and adjudged, that upon payment to said defendants of the several amounts so ascertained the court make and enter a final judgment condemning the land to the public use for the public improvement described in the complaint. Upon the conclusion of the trial of this action the trial court found that the value of the land taken and of all improvements thereon pertaining to the realty was $5,568 and that no damage would result to the remainder of the parcel by reason of the condemnation of that portion sought to be condemned. The court further specifically found "That the defendant Pomona College, a corporation, has an interest in and to said parcel of land under and by virtue of a mortgage but that the security of said mortgage is not impaired, and therefore said defendant is not entitled to receive compensation herein". On January 6, 1930, an interlocutory judgment in said action was duly entered. In this judgment it was decreed that, upon payment to the several defendants of the amounts determined as compensation proper to be paid to them, the parcel of land described in the complaint should be condemned to the use of plaintiff, the city of Los Angeles. On November 10, 1931, the plaintiff in said action paid into court the aforesaid sum of $5,568 to meet the award made by the interlocutory judgment. On November 20, 1931, the said sum so deposited was paid to the holder of the legal title of the land affected by the condemnation action. Final judgment of condemnation was thereupon entered. No appeal was taken either from the interlocutory judgment or from the final judgment in said condemnation action. On December 9, 1931, Pomona College instituted the present action whereby it sought to foreclose its mortgage and to have recourse to the aforesaid award of $5,568 in the possession of the Security First National Bank of Los Angeles, holder of the legal title of the mortgaged land or to such part of said sum as should be necessary to satisfy any deficiency that might remain after the mortgaged premises were sold and the proceeds of such sale applied to the mortgaged debt. The principal defense pleaded and urged during the trial of the action by the trustee in bankruptcy of the bankrupt estate of Fred B. Dunn, the mortgagor, was that the interlocutory judgment in the aforesaid condemnation action instituted by the city of Los Angeles in which action Pomona

College was joined as a party defendant decreed that the security of the mortgage was not impaired by the taking of a portion of the mortgaged premises, that consequently the mortgagee was not entitled to any compensation for such taking, and that this judgment having long since become final amounts to an adjudication by which the plaintiff in the instant action is bound. This contention did not prevail in the trial court. It constitutes the principal contention urged on this appeal for reversal of the judgment.

The problem which is therefore presented in connection with the contention thus advanced is whether or not the right of the respondent mortgagee to have recourse to the award granted to the land owner for the taking of a part of the mortgaged premises has become *res judicata* by virtue of the judgment in the prior condemnation action.

In entering upon a consideration of this problem it must be conceded at the outset that the right of a mortgagee in a proper case to subject an award made to the land owner as compensation for a part of the mortgaged premises taken through the medium of eminent domain proceedings to the lien of his mortgage is not open to doubt. Under the familiar doctrine of equitable conversion the award is considered as land and the mortgagee is entitled so to regard it and to have recourse to it in satisfaction of the mortgage lien (*Los Angeles T. & S. Bank* v. *Bortenstein,* 47 Cal. App. 421, 423 [190 Pac. 850]). Here, however, the mortgagee was joined as a party defendant in the condemnation action and was served with process therein so that the court in said action had jurisdiction of the subject matter and of the mortgagee and found that the security of the mortgage was not impaired by the taking of the land, for which reason no award was made to the mortgagee in such action.

The long-established principle of *res judicata* is specifically recognized by statute in California. Subdivision 2 of section 1908 of the Code of Civil Procedure declares that in cases other than those designated in subdivision 1 of the section the judgment in an action or special proceeding before a court or judge of this state having jurisdiction to pronounce the judgment is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing, under the

same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding. The rule thus announced is extended by section 1911 of the same code to cover those matters which were actually and necessarily included in the former judgment or necessary thereto. The language of section 1908 has been so construed as not to limit the estoppel to an action identical in form with the former suit or in which the same parties are plaintiff and defendant in each action and it is settled that the doctrine may be invoked whenever, in the second action, the parties are in privity with the parties to the first action and the same issue is presented for determination which was determined in the former suit (*Lamb* v. *Wahlenmaier,* 144 Cal. 91, 93 [77 Pac. 765, 103 Am. St. Rep. 66] ; *Martin* v. *Holm,* 197 Cal. 733, 750 [242 Pac. 718] ).

It is obvious that the legal principle which forms the basis for the doctrine of *res judicata* is the familiar principle of estoppel. In *Todhunter* v. *Smith,* 219 Cal. 690, 695 [28 Pac. (2d) 916], it is pointed out that the doctrine of *res judicata* has a double aspect and that while a prior judgment operates as a bar against a second action upon the same cause it operates as an estoppel or conclusive adjudication in a subsequent action upon a different claim as to such issues in the second action as were actually litigated and determined in the first action. It is apparent that, if the doctrine is here applicable, it can only apply as an adjudication of issues which were actually litigated and determined in the prior suit in condemnation. The prior judgment may not operate as a bar to the present action for the reason that the present action is upon an entirely different claim than that which formed the basis of the proceeding in eminent domain.

In support of the judgment respondent contends that the only issue which is here important that was adjudicated in the prior action is the validity of respondent's mortgage. In the final analysis the correctness of this contention depends upon the allegations contained in the complaint in the condemnation action.

It is conceded and the trial court found that the proceedings for condemnation were instituted under the "Street Opening Act of 1903". The trial court also found that the prayer of the complaint in the condemnation action was that defendants should be required, by answer, to set

forth the nature and extent of their several estates or interests in the land sought to be condemned, that such several estates or interests be determined and adjudicated, that the value of each such separate estate or interest and the damage accruing to the respective owners of such separate estates or interests by reason of the condemnation thereof should be ascertained and determined and that, upon payment to said defendants of the several amounts so determined, a final judgment be entered condemning the land to public use. Since it is conceded that the condemnation action was brought under the Street Opening Act of 1903, the provisions of this statute must be examined for the purpose of discovering whether or not the right of the mortgagee, respondent herein, to share in the award granted for the taking of the land was properly adjudicated in the prior action. Section 5 of the act provides that after jurisdiction has been acquired the city council shall, by ordinance, order the improvements to be made and direct an action to be brought by the city attorney in the superior court in the name of the municipality for the condemnation of the property necessary or convenient to be taken therefor. Section 6 contains a mandate to bring the action upon the passage of the ordinance ordering the improvement. Section 8 provides for setting the case for trial and for the appointment of referees to ascertain the compensation to be paid. Section 10 specifies the time when the right to compensation and damages shall be deemed to have accrued and the findings which the referees or the court or jury are required to make. It is there provided that the value of each parcel of property sought to be condemned "and of each separate estate or interest therein" shall be found. It is also there provided that the damages that will accrue to the remainder of the parcel "and to each separate estate or interest therein" by reason of the severance of the portion sought to be condemned shall be found.

Bearing in mind the above-mentioned provisions of the statute under which the condemnation action was instituted and the allegations of the complaint therein it is obvious that the right of the respondent to share in whatever award might be made was a proper issue in the action.

Respondent, however, contends that it was not a necessary party defendant to the prior action, and since it is conceded that it made no appearance therein it is not es-

topped by the trial court's finding in such action that the security of the mortgage was not impaired and that the mortgagee was not entitled to receive any compensation or to have any share of the award made to the property owner for the taking of a portion of the mortgaged premises. In connection with this contention a number of arguments are presented which are entitled to careful consideration.

It is first urged that respondent was not a necessary party to the condemnation suit for the reason that in California a mortgagee has no estate or interest in the land which is encumbered by the lien of the mortgage. In support of this argument a number of decisions are cited. The earliest of these authorities is the case of *Schumacker* v. *Toberman,* 56 Cal. 508. In this case, the city council of the city of Los Angeles, acting under the provisions of the city charter, had determined to extend and widen a certain street and had ordered proceedings for condemnation to be instituted. In these proceedings the city failed to make a mortgagee of one of the parcels sought to be condemned a party. When the damages had been ascertained the council ordered an assessment to pay such damages to be made "On Alameda Street, one hundred feet each way from its intersection with Los Angeles Street; and on Los Angeles Street (and intervening cross streets) from Alameda Street southerly to Requena Street". Subsequently an assessment was returned and adopted by the council which included the property on the north line of Requena Street. Afterwards the council ordered the surveyor to correct the assessment by striking therefrom the assessment of the property on Requena Street and increasing the other assessments proportionally. This correction was accordingly made. The plaintiff, Schumacker, a property owner and taxpayer in the city, brought an action to enjoin the issuance of bonds to pay the cost of the street improvement and succeeded in having an injunction granted. On appeal by the defendant the judgment was affirmed. The majority opinion held that the first assessment was void and that the statute under which it was proposed to issue the bonds had adopted the void assessment. Therefore the issuance of bonds under the authority of a statute which had adopted a void assessment should be restrained in an action brought for this purpose by a property owner and taxpayer who might be injuriously affected by the issuance of such

bonds. No mention was made in the majority opinion of the failure to have included the mortgagee of a part of the property sought to be condemned as a party in the condemnation. In a concurring opinion Mr. Justice Myrick said: "I am of opinion, that Michael Reese, being a mortgagee, was not a necessary party." It is significant that in the concurring opinion no other mention is made of the failure to have joined the mortgagee as a party and that the opinion is based on other and different grounds. It is apparent, therefore, that the above-quoted language is *dictum*. The syllabus of the case so regards it, for it is there declared: "It *seems* that a mortgagee is not a necessary party in proceedings for the condemnation of land for street improvement."

In *Savings & Loan Society* v. *McKoon*, 120 Cal. 177 [52 Pac. 305], the mortgagee, a California corporation, brought an action to foreclose its mortgage and obtained a decree. On appeal it was contended that the action should have been dismissed because of noncompliance by the plaintiff with section 299 of the Civil Code, as it then existed, requiring every corporation to file with the county clerk of every county in the state in which it held any property, a certified copy of its articles of incorporation and providing as a penalty for noncompliance with this direction that the corporation should not maintain or defend any action in relation to such property. It was decided that the penalty imposed by the statute did not apply to an action for the foreclosure of a mortgage. One of the grounds of the decision was that a mortgage, although in form a conveyance, is not so in fact and that the legal effect of a mortgage is merely to create a lien on the land which is an incident of the secured debt and that a foreclosure suit is simply an action for the collection of a debt and the enforcement of a lien. In the course of its decision the court, in referring to the character of mortgages, used the following language: "They pass no estate in the land, but are mere securities." It is further said in the opinion: "It is manifest that the plaintiff did not, at the time of the commencement or trial of this action own or hold the mortgaged property, and therefore did not subject itself to the penalty imposed by section 299 of the Civil Code." It may properly be observed that the last-quoted language is the real ground of the decision and that the language of the court

with reference to the fact that a mortgage passes no estate in land is *dictum*.

In *Guinn* v. *McReynolds*, 177 Cal. 230 [170 Pac. 421], which was a suit to foreclose a mortgage, the county of Tulare, a defendant in the action, set up a claim of lien for expenses incurred in eradicating infectious diseases and insect pests under section 2322a of the Political Code. On appeal by the aforesaid county a judgment in favor of the mortgagee was affirmed. The ground of the decision was that there was nothing to be discovered in the statute to indicate a legislative intent to make the county's lien superior to other liens earlier in time. In discussing the matter the court adverted to the language of the statute which provides for the foreclosure of the county's lien by sale of the property and that any surplus remaining shall be paid to the property owner. It was pointed out that the provision for the payment of the surplus furnished some ground for declaring that the legislative intent was that preexisting mortgage liens should not be affected by the county lien. In connection with this phase of the case it was remarked that a mortgagee has no ownership or interest in the mortgaged land and that, under California law, he is merely the holder of a lien which is an incident of the debt. The language which declares that a mortgagee has no interest in the land is *dictum* not necessary to the decision.

In *Johnson* v. *Razy*, 181 Cal. 342, at page 344 [184 Pac. 657], there is again a declaration that a mortgage lien is not an interest in mortgaged property but a mere lien thereon. Analysis of the court's opinion discloses that this declaration is *dictum*.

With respect to the three above-mentioned authorities it may be observed that the statement that a mortgage vests in the mortgagee no estate or interest in the mortgaged land but creates merely a lien is a correct statement under the facts of those cases. We are not here, however, dealing with a problem which is similar to those that were presented in the cited cases. We are here dealing with the language of a particular statute which sets up machinery that may be utilized by a municipality in exercising the right to condemn private property for public use and which contains explicit directions as to the findings to be made by the referees who are appointed by the court to ascertain the compensation to

be paid for the land or by the court itself or by the jury. The statute specifically requires that the value of each parcel sought to be condemned *"and of each separate estate or interest therein"* (italics ours) shall be found. It is our conclusion that the quoted language is sufficiently broad to indicate that the holder of a mortgage on property, a part of which is sought to be condemned under the provisions of the statute here considered, is a proper party defendant in the condemnation suit notwithstanding the fact that strictly speaking he is neither the owner of an estate or interest in the property. Certainly he has some sort of interest in the land by reason of the lien of his mortgage and is obviously interested in the outcome of an action the result of which may be to impair the security of his mortgage lien. In *City of Vallejo* v. *Superior Court,* 199 Cal. 408, 416 [249 Pac. 1084], it was declared that the owner of a deed of trust given to secure payment of a promissory note had a present proprietary interest in the land conveyed by such trust deed which it had the right to have considered and determined in an action instituted by a municipality for the purpose of condemning a portion of the land encumbered by the trust deed.

Respondent points to the fact that section 33 of the act now being considered defines various words and phrases used in the statute and that subdivision 7 of such section so defines the terms "owner" and "any person interested" as to eliminate the necessity of including a mortgagee as a party defendant in a condemnation action brought under the provisions of the act. Examination of the entire act is, however, productive of the conclusion that the definition of the above-quoted terms set forth in subdivision 7 of the section refers to certain sections which relate to the levying and payment of assessments wherein these exact terms are used. The phraseology of section 10 to which reference has heretofore been made is definitely broader than the terms which are defined in subdivision 7 of section 33 and it is our conclusion that the language of the former section is not to be measured by the narrow limitations of the latter section. We are the more constrained to this view by reason of the language of subdivision 7 of section 33 which makes explicit reference to assessments.

Respondent further contends that the only issue in the prior action presented for the trial court's determination

which related to the mortgage was the existence and validity of the mortgage, that respondent was entitled to believe that this was the only issue referring to the mortgage that would be determined, and that the trial court in said action having gone further than this and having decided that the security of the mortgage was not impaired and that the mortgagee was for this reason not entitled to compensation, its judgment as to these latter matters which were not proper issues in the action is not *res judicata* in the present action.

This contention is not appealing. As heretofore noted, section 10 of the act which bears the title "Compensation and Damages" definitely requires the referees or court or jury to find the value of each parcel of property sought to be condemned and of each separate estate or interest therein and the damages that will accrue to the portion not sought to be condemned and to each separate estate or interest therein by reason of severance. The obvious purpose of requiring these findings would appear to be to enable the court to arrive at a determination of the compensation and damages to be awarded to all parties having an interest in the property affected by the condemnation proceedings. Section 12 of the statute provides that upon the confirmation of the report of the referees or receipt of the jury's verdict, or the filing of the court's findings, "the court shall make and enter an interlocutory judgment in accordance with such report, verdict or findings, adjudging that upon payment to the respective parties, or into court for their benefit, of the several amounts found due them as compensation, and of the costs allowed to them, the property involved in the action shall be condemned to the use of the plaintiff, and dedicated to the use specified in the complaint". Section 31 of the act provides that upon satisfactory proof of payment of the awards to the respective parties entitled thereto, the court shall direct satisfaction of the interlocutory judgment and shall enter a final judgment of condemnation.

The three sections of the act to which reference has been made, viz., sections 10, 12 and 31, therefore provide a complete plan for ascertaining the value of any estate or interest in the property affected by a condemnation action brought in accordance with the provisions of this particular statute and for determining the compensation which shall be awarded for the taking and for ordering payment of the compensation

in the interlocutory judgment. It is admitted that respond-, ent was served with a copy of the complaint in the action and with summons to appear. The respondent is charged with knowledge of the provisions of the statute under which the action was brought. The prayer of the complaint and the above-mentioned sections of the statute afforded to respondent ample notice that there would be an ascertainment and determination of the damage, if any, which would accrue to it by reason of the taking of a portion of the mortgaged premises.

The respondent also contends in support of the judgment that, since it did not appear in the condemnation action although it was served with process, there could be no adjudication binding upon it respecting the impairment of the security of the mortgage. This contention is lacking in merit (*Morenhout* v. *Higuera,* 32 Cal. 289).

It is also urged that the doctrine of *res judicata* is not here applicable because it is said that respondent and the mortgagor, Fred B. Dunn, were not adversaries in the prior action in condemnation. It is the rule that the doctrine is applicable only when it may be declared that the parties as to whom the doctrine is sought to be applied were adversary parties in the former action (Sec. 1910, Code Civ. Proc.; *Estate of Heydenfeldt,* 127 Cal. 456, 459 [59 Pac. 839]; *Robson* v. *Superior Court,* 171 Cal. 588, 594 [154 Pac. 8]; *Victor Oil Co.* v. *Drum,* 184 Cal. 226, 239 [193 Pac. 243]; *Estate of Lloyd,* 106 Cal. App. 507, 512 [289 Pac. 892]). It must, however, be conceded that an action in condemnation is, in some respects, different from an ordinary action at law. Certainly an action brought under the provisions of the statute which is here involved presents certain aspects of differentiation. As has heretofore been observed, the duty is imposed upon the trial court to discover and to find the value of each parcel sought to be condemned and of each separate estate or interest therein and to enter an interlocutory judgment in accordance with the findings providing for payment of the compensation awarded to the parties to the action. It was said in *Anderson* v. *Citizens Savings etc. Co.,* 185 Cal. 386, 391 [197 Pac. 113, 116], "It is one of the functions of a condemnation action to determine as between the defendants who is the owner of the property and therefore entitled to the compensation for its taking, and where it

appears on the face of the pleadings that the property sought to be condemned is part of a larger tract, which is claimed adversely to each other by two or more defendants, it may well be that a judgment that one of the defendants is the owner of the property condemned will be an adjudication as to the title to the whole tract of which it is a part.'' It is apparent that it is one of the functions of a condemnation action brought under the particular statute which is here involved to ascertain the value of the separate interests in the land sought to be condemned and to determine the compensation proper to be awarded to the owner of each interest. When, therefore, a mortgagee is made a party to such an action and is served with process therein and elects to make no appearance, it is entirely reasonable that he should be bound by the judgment in the action which denies any award of compensation to him. The alignment of parties is not conclusive. The very character of the peculiar action in which respondent and its mortgagor were joined as parties defendant indicates that these parties were adversaries although they were there named on the same side of the action. They were in reality adversary parties because the mortgagee was primarily interested that the security of the mortgage should not be impaired by the taking of the property. The mortgagor's primary interest was that he should receive full compensation for the land which he owned and which was then being taken. These interests were by no means identical. On the contrary, they were antagonistic. The effect of the decree in the condemnation action granting no award to the mortgagee was prejudicial to the mortgagee. It was not injurious to the mortgagor. The award granted to the mortgagor was for the value of the land taken. In effect it amounted to a sale of the parcel condemned. If any award had been made to the mortgagee such award would necessarily have been taken from the award granted to the mortgagor. Analysis of the situation demonstrates, therefore, that, although the mortgagor and mortgagee were co-defendants in the condemnation action, their interests in the outcome of the suit were really antagonistic. It is our opinion that, under the peculiar circumstances here appearing, it may not be successfully urged that the doctrine of *res judicata* is not applicable because the mortgagee and mortgagor were joined as co-defendants in the prior action.

■ Respondent finally contends that appellant is not entitled to invoke the doctrine of *res judicata* for the reason that Fred B. Dunn who was adjudicated bankrupt during the pendency of the condemnation action was not a party to said action. The prior action was brought against the Security First National Bank of Los Angeles, holder of the legal title to the land and the mortgagee, Pomona College. It is said that there was no privity between the bank and appellant, trustee in bankruptcy of the bankrupt estate of Fred B. Dunn. Appellant contends that the trust under which Dunn conveyed legal title to the bank was void as a perpetuity. The correctness of this contention respondent concedes but argues that the trust being void the rights of the parties are as if the trust had never been made and the trust being void the bank did not take the legal title to the property as trustee for appellant but the title, both legal and equitable, remained in Dunn at all times until he was adjudicated a bankrupt when it passed to appellant as his trustee. The conclusion which is reached by this reasoning is that the rights of appellant as trustee are derived adversely to and not from the bank for which reason there is no privity between the bank and appellant, hence appellant is not entitled to invoke the doctrine of *res judicata*.

The argument is ingenious but is not convincing. Assuming that the trust under which Dunn conveyed to the bank was void by reason of being a perpetuity the fact remains that at the time the condemnation action was instituted the record legal title stood in the bank. The trust being void the bank continued to hold the legal title in trust for Dunn. Dunn, therefore, was the real party in interest in the condemnation action. When, during the pendency of the condemnation action, Dunn was adjudicated a bankrupt and appellant was appointed his trustee in bankruptcy the latter succeeded to all of Dunn's rights in the property sought to be condemned for the benefit of Dunn's general creditors. There was thus privity of estate between Dunn, the real party in interest other than respondent in the condemnation action, and appellant, the trustee of the bankrupt estate. It is our opinion, therefore, that appellant is not foreclosed from invoking the doctrine of *res judicata* because of the seeming lack of privity for which respondent contends.

The conclusion which we have reached with respect to the applicability of the doctrine of *res judicata* renders it unnecessary to consider other contentions advanced by appellant on this appeal.

The judgment is therefore reversed with directions to the trial court to correct its findings and conclusions of law and to modify the judgment in accordance with the views herein expressed.

Barnard, P. J., and Marks, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1935.