[L. A. No. 16656. In Bank.—December 1, 1938.]

CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. JOHN ANSON FORD et al., as Members of the Board of Supervisors of Los Angeles County, Respondents.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Bourke Jones, Deputy City Attorney, for Appellant.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondents.

THE COURT.—The appeal in this action which was determined by the District Court of Appeal, Second Appellate District, Division Two, was ordered to be heard in this court in order that more careful consideration thereafter might be afforded than was practicable at and preceding the date upon which such hearing was granted. Following an examination of the points of law as they have been presented in the several briefs of the respective parties, it has been determined that the decision that was rendered thereon by the said District Court of Appeal correctly represents the conclusion that has been reached by this court with respect to the issues that have been submitted herein. Accordingly, it is ordered that the opinion that was written by Mr. Justice Wood, of said District Court of Appeal be, and it is adopted as the opinion and decision of this court. It is as follows:

"The City of Los Angeles filed a petition in the Superior Court for a writ of mandate directing respondents, members

of the Board of Supervisors of Los Angeles County, to cancel certain taxes and assessments against parcels of real estate under the ownership of petitioner. The cause was submitted upon the pleadings and a stipulated statement of facts and judgment went for respondents, from which petitioner appeals.

"Petitioner acquired the land designated on the map appearing in the transcript as parcel B, between Alameda street and Santa Fe avenue, for the purpose of continuing Washington boulevard easterly from Alameda street at the same width as parcel B. The grade of this land is far below that of Alameda street, Santa Fe avenue and Washington boulevard at its intersection with Alameda street, and it is impracticable to construct this continuation of Washington boulevard without raising the grade a considerable distance above the present grade of parcel B and also of the land designated as parcels A and C. At the time the land was acquired by the city it was the city's intention to contruct the street on a bridge or viaduct but the city was forced to abandon this original plan because of its excessive cost. In order to carry out the proposed continuation of Washington boulevard without the necessity of constructing a bridge or viaduct a fill is intended to be made and in order to do so it was necessary to acquire property on either side of parcel B in order to support the fill, and the land designated as parcels A and C was acquired by the city for that purpose. In order to afford a route for public travel between Alameda street and Santa Fe avenue until such time as Washington boulevard may be improved to the desired grade and opened for public travel between Alameda street and Santa Fe avenue and slope rights for the fill are no longer needed, the land designated as parcel D was acquired by the city. The title to parcels A, C and D, was acquired by the petitioner by a deed which contained a provision that title should revert to the grantors when the parcels of land designated as A, C and D should be uniformly filled and the total area brought to the established grade of Washington boulevard and further that parcel D should revert when parcel B was improved for use as a highway and actually opened for travel. The city acquired the three parcels mentioned in the deed on April 12, 1935, at which time the taxes for the years 1931–1932, 1932–1933,

1933–1934 and 1934–1935 were unpaid and the land sold to the state for said taxes, the property being only a portion of the real estate assessed as a unit for the taxes mentioned. Application was made to the board of supervisors for the cancellation of the taxes in so far as levied upon parcels A, C and D and the application was denied on April 27, 1936.

■ "It is provided in section 1, article XIII, of the Constitution of California that ' . . . property . . . as may belong to . . . any . . . municipal corporation within this state shall be exempt from taxation . . . '. In *Smith* v. *City of Santa Monica,* 162 Cal. 221 [121 Pac. 920], the plaintiff sought to quiet title to certain lands in the City of Santa Monica for which he held tax deeds from the state. The assessments under which the land was sold were for the years 1894 and 1895. The tax collector's deeds were made on June 10, 1908. The City of Santa Monica had brought an action to condemn the real estate for public purposes as a city park and judgment in its favor was entered on December 20, 1897. In upholding a judgment in favor of the defendant city the Supreme Court said: 'It may safely be said that when a municipal corporation acquires property under such circumstances the title which the state takes by the tax-collector's deed is merged into the larger title which the municipality holds under the trusts both for the public as distinguished from the state and also for the state as the supreme sovereign.' In *State* v. *Minidoka County,* 50 Idaho, 419, 298 Pac. 366, the Supreme Court of Idaho had under consideration an action brought by the state to quiet title to lands purchased by the state in foreclosing a school fund mortgage and to require the county commissioner to cancel and discharge certain tax liens. Basing its decision upon a section of the constitution of Idaho, which exempts 'the property of . . . the state . . . from taxation', the court said: 'When the state obtains complete unconditional title to lands pursuant to the foreclosure of school fund mortgages, the title is freed, by article 7, section 4, of the constitution, from all past taxes and liens therefor, and all such liens on the tax records become nil and should be cancelled.'

"In 1925 the legislature amended section 3804a of the Political Code by providing that: 'Any uncollected tax, or assessment, or portions thereof, . . . upon an assessment of prop-

erty which after the time said tax or assessment became a lien was acquired and owned . . . by any . . . municipal corporation . . . and which, because of such public ownership, is not subject to sale for delinquent taxes, may, upon satisfactory proof thereof, be cancelled by the officer having custody of the record thereof upon the order of the board of supervisors, . . . '. The method thus provided for the cancellation of the assessment or uncollected tax was applied in *People* v. *Board of Supervisors,* 126 Cal. App. 670 [15 Pac. (2d) 209], where a writ of mandate was issued commanding the members of the board of supervisors to cancel an assessment of taxes against land owned by the city and acquired by it for park purposes. It was there stated that the case of *City of Santa Monica* v. *Los Angeles County,* 15 Cal. App. 710 [115 Pac. 945], relied upon therein and also in the present litigation, does not pass upon the question then before the court. The court pointed out that section 3804a was not in existence at the time of the decision in *Santa Monica* v. *Los Angeles County.* The constitutionality of section 3804a was upheld. An application for a hearing was denied by the Supreme Court.

██ "Respondents point out that the land acquired by the city is a portion of a larger parcel taxed as a unit and contend that the language of section 3804a should be construed as meaning that the word *portion* refers to an instalment of the tax due. We cannot accept this view. The word *portion* is related to the word *assessment* as well as to the word *tax.* It would be doing violence to the language used by the legislature to place upon it the construction suggested. By the enactment of section 3804a the legislature provided effective means for the cancellation of assessments upon property acquired by the municipality. The legislature did not enlarge or restrict the right of the municipality to exemption from taxes assessed against lands in its ownership. Indeed it was not within its power to do so. The Political Code provides for payment of taxes by instalments, a word which is used in various sections of the code. If the legislature had intended to provide for the cancellation of unpaid instalments appropriate language to that effect doubtless would have been used. By using the word *portion* rather than the word *instalment* it must be considered that the legislature intended

to provide for a situation where a municipality or other state agency acquires a portion of a lot or tract.

██ ''The fact that the property involved might possibly revert to private ownership is not of consequence in the present discussion. The property is in the ownership of the City of Los Angeles. The taxes were upon an assessment of the property and not upon a reversionary or other lesser interest. An assessment upon a lesser interest would not have been possible since it has not come into existence.''

The judgment is reversed.