251 F.2d 534
 COUNTY OF SAN DIEGO and City of San Diego, Appellants,
v.
UNITED STATES of America, Appellee.
Charles W. CARLSTROM, Southern California Children's Aid
Foundation, Inc., a corporation, Southern California
District Council of the Assemblies of God, Inc., a
corporation, and the Salvation Army, Appellants,
v.
COUNTY OF SAN DIEGO, Appellee.
 No. 15352.
 United States Court of Appeals Ninth Circuit.
 Jan. 13, 1958.
 
 James Don Keller, Dist. Atty., Duane J. Carnes, Carroll H. Smith, Deputy Dist. Attys., County of San Diego, San Diego, for appellant County of San Diego, California.
 Jean F. DuPaul, City Atty., Alan M. Firestone and Aaron W. Reese, Dep. City Attys., San Diego, Cal., for appellant City of San Diego, California.
 Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, A. Donald Mileur, Arthur I. Gould, Atty., Department of Justice, Washington, D.C., Laughlin E. Waters, U.S. Atty., Joseph F. McPherson, George F. Hurley, Asst. U.S. Attys., Los Angeles, Cal., for appellee, United States of America.
 Sloane & Fisher, San Diego, Cal., for appellees Charles W. Carlstrom et al.
 Before ORR, LEMMON and CHAMBERS, Circuit Judges.
 ORR, Circuit Judge.
 
 
 1
 The County and City of San Diego will be hereinafter referred to as 'Appellants', and Charles W. Carlstrom, Southern California Children's Aid Foundation, Inc., Southern California District Council of the Assemblies of God, Inc., and the Salvation Army will be referred to as 'the former landowners'.
 
 
 2
 On the 7th day of March, 1955, the first Monday, the former landowners held title to certain real estate and improvements situate in the County of San Diego, State of California. On that date, under California law, taxes for the fiscal year commencing on July 1, 1955, became a lien on their real estate and improvements.
 
 
 3
 On the 16th day of June, 1955, the United States of America took title to their property under a declaration of taking. The trial court in which the condemnation proceedings were heard entered a declaratory judgment to the effect that the taxes which attached to the property by reason of the March 7th lien were cancelled under California law at the time the declaration of taking was filed by the United States. The County and City challenge the correctness of said judgment in this appeal.
 
 
 4
 The questions presented are: Did the lien, which attached on the 7th day of March, transfer as a matter of law to the proceeds deposited in court in the condemnation proceedings? Or were the taxes cancelled by reason of Sections 4986 and 4986.2 of the California Revenue and Taxation Code?
 
 
 5
 The trial court held that said sections did apply and that said taxes were cancelled. We agree.
 
 
 6
 'Section 4986 reads in part: 'All or any portion of any uncollected tax, penalty, or costs, heretofore or hereafter levied, may, on satisfactory proof, be cancelled by the auditor on order of the board of supervisors with the written consent of the district attorney if it was levied or charged:
 
 
 7
 '(f) On property acquired after the lien date by the United States of America if such property upon such acquisition becomes exempt from taxation under the laws of the United States.
 
 
 8
 '(g) On personal property or improvements assessed as a lien against real property acquired after the lien date by the United States of America * * * which because of this public ownership is not subject to sale for delinquent taxes.'
 
 
 9
 Application was made to the Board of Supervisors for an order directing the auditor to cancel the taxes on the property taken by the United States. The application was denied.
 
 
 10
 The courts of California have held that the word 'may' as used in the first paragraph of 4986 is to be read as 'shall'. City of Los Angeles v. Ford, 1938, 12 Cal.2d 407, 84 P.2d 1042; People v. Board of Supervisors, 1932, 126 Cal.App. 670, 15 P.2d 209; City of Los Angeles v. Board of Supervisors, 1930, 108 Cal.App. 655, 292 P. 539. Such being the case, the Board of Supervisors and the District Attorney had no alternative but to cancel the taxes when the United States acquired title after the lien date. To us, such is the plain and unequivocal mandate of the statute.
 
 
 11
 Appellants argue that the last paragraph of 4986, which refers to subsection(g), places a limitation on the duty of the Board to cancel insofar as taxes on the improvements condemned in this case are concerned. We are not so pursuaded. Subsection (f) makes no distinction between types of property acquired by the United States and we believe it was intended to deal with both realty and improvements or personalty condemned by the United States. We think that the last paragraph and subsection (g), on the other hand, deal with improvements not in the ownership of a nontaxable entity. Of what avail would a lien be against improvements owned by the United States insofar as attempting to sell it to collect a tax is concerned?
 
 
 12
 Appellants argue that Sections 4986 and 4986.2 are unconstitutional with respect to cancellation of taxes on lands acquired by condemnation rather than by purchase, in that they purport to authorize the making of a gift of public money or other think of value to a private individual, in contravention of Article IV, Section 31, of the California Constitution. The California courts have held that this prohibition applies to legislative attempts to cancel liability of taxes which had arisen before the remitting statute was passed, but have not said that this prohibition extends to a legislative direction to cancel taxes the liability for which does not arise until a later date such as here, a quarter century subsequent. See In re Estate of Skinker, 1956, 47 Cal.2d 290, 296, 303 P.2d 745, 748.
 
 
 13
 We find no support in the cases cited by appellants for their position that the taxes secured by the lien are entitled to be paid out of the funds deposited by the government. However, we would be more concerned with this argument in the event we were of the opinion that the taxes were not cancelled. Cancelled taxes do not attach to any fund.
 
 
 14
 The United States District Court in a condemnation proceeding is directed by Section 258a of 40 U.S.C.A. to 'make such orders in respect of * * * liens * * * (and) taxes * * * as shall be just and equitable.' We think the Trial Court fully and correctly complied with this section in entering its declaratory judgment that the taxes which attached to the property in question were cancelled by operation of Sections 4986 and 4986.2 of the California Revenue and Taxation Code.
 
 
 15
 While we are not concerned here with apportionment of taxes as was provided for by Section 1252.1 of the California Code of Civil Procedure (in effect at all times relevant here but since repealed), we think the enactment of said section is a further indication that the State of California was and is not disposed to impose a burden on a taxpayer who loses title to his property by condemnation, when such a burden is not imposed in a voluntary transaction between individuals or in transfers to the government on a voluntary basis. Ordinarily, in a private transaction, the buyer, not the seller, would pay the taxes in addition to paying the value of the land. The United States, in fixing compensation for condemned property, does not take into account future taxes to be imposed. It pays only the fair value of the land. If future taxes are taken out of the award the owner does not get the fair value. We think this was the reason which prompted the legislature to provide for cancellation.
 
 
 16
 Affirmed.