[Civ. No. 6144. Fourth Dist. Nov. 10, 1959.]

THE STATE OF CALIFORNIA ex rel. State Public Works Board, Plaintiff and Respondent, v. JAMES J. CLYNE et al., Defendants; COUNTY OF SAN DIEGO, Appellant; ROSE ANN CLYNE GIBBS et al., Defendants and Respondents.

James Don Keller, District Attorney, Henry A. Dietz, County Counsel, and Donald L. Clark, Deputy, for Appellant.

Stanley Mosk, Attorney General, Walter S. Rountree, Assistant Attorney General, Benjamin E. King and Henry K. Workman, Deputy Attorneys General, for Plaintiff and Respondent.

McInnis, Focht & Fitzgerald and James L. Focht, for Defendants and Respondents.

GRIFFIN, P. J.—Plaintiff and respondent, State of California, acting by and through the Public Works Board (hereinafter referred to as "State"), brought this action on April 21, 1958, for condemnation, in fee simple, against owners of and claimants to 12 parcels of real property located in the city of San Diego, for the purpose of securing a site for the construction of a new building for the California Department of Motor Vehicles under the provisions of Property Acquisition Law (part 11) division 3, title 2 of the Government Code and in accordance with a resolution of the State.

Appellant, county of San Diego, appeared and claimed a lien for taxes for the fiscal year 1957-1958 on parcels 5, 6, 8, 9, 10 and 12 in a total sum of $1,024.07 and for 1958-1959 parcels 1, 5, 6, 8, 9, 10 and 12 in a total sum of $1,402.49, based on estimates, since the tax rates had not yet been fixed. A jury trial of the action commenced on August 4, 1958, and continued through August 14, 1958. Prior to trial the State did not secure possession of the property and no order for immediate possession issued.

On August 25, 1958, the court held a hearing on the matter of the taxes claimed by the county. Defendant and respondent property owners and other parties claiming an interest therein

did not contest the county's claim for the 1957-1958 taxes and those taxes were accordingly ordered paid. However, issue was made as to the county's claim for 1958-1959 property taxes and the court found and ordered that the county was not entitled to any such taxes for said fiscal year. The court on September 17, 1958, specifically found "that although a lien attached on the first Monday in March of 1958 on said parcels for said 1958-1959 taxes thereon said 1958-1959 taxes are not yet due, the first installment of said taxes not being due until November 1, 1958, and the second installment not being due until February 1, 1959, and that by reason of such said County is therefore not entitled to payment of said 1958-1959 taxes." The judgment was entered on September 25, 1958. (The final order of condemnation was recorded on December 1, 1958.) The court ordered that such taxes be cancelled, discharged and extinguished.

Appellant county has now appealed from those portions of the judgment which deny its claim for the 1958-1959 taxes, which cancel, discharge and extinguish the lien arising from said taxes, and which award such amounts to the respondent property owners. It is the claim of the county (1) that the taxes claimed were a lien on the subject property which attached to the property on the first Monday in March, 1958; (2) that the tax lien is to be paid out of the condemnation award; (3) that the county is entitled to taxes for the entire fiscal year 1958-1959; (4) that the tax lien, which attached to the property on the first Monday of March, 1958, for the fiscal year 1958-1959 fixed liability on the property for taxes for that entire fiscal year; (5) that taxes may not be cancelled by Revenue and Taxation Code, section 4986 et seq. as between condemnee and taxing agency; that the sole issue to be determined on this appeal is "In an eminent domain proceeding, is a taxing body (such as the County of San Diego) entitled to payment of taxes out of the total compensation awarded for the property being condemned, where title to said property passes to the condemnor, a tax-exempt corporation, after the lien has attached but before any of said taxes are due?" Citing such authority as *City of Long Beach* v. *Aistrup*, 164 Cal. App.2d 41 [330 P.2d 282] ; *County of San Diego* v. *County of Riverside*, 125 Cal. 495, 500 [58 P. 81] ; *Wilson* v. *Beville*, 47 Cal.2d 852, 855 [306 P.2d 789] ; *Pomona College* v. *Dunn*, 7 Cal.App.2d 227, 232 [46 P.2d 270] ; *City of Vallejo* v. *Superior Court*, 199 Cal. 408 [249 P. 1084, 48 A.L.R. 610] ; *United States* v. *Certain Parcels of Land in City of San Diego*,

44 F.Supp. 936; *People* v. *Northcutt,* 171 Cal.App.2d 620 [340 P.2d 1043] and section 2187, Revenue and Taxation Code.

Respondent property owners contend that all taxes here under consideration were cancelled by virtue of the operation of section 4986, Revenue and Taxation Code, which provided in part, "All or any portion of any uncollected tax . . . heretofore or hereafter levied, may, on satisfactory proof, be cancelled by the auditor on order of the board of supervisors with the written consent of the district attorney if it was levied or charged; . . . (e) on property acquired after the lien date by the State . . ."; they insist that neither the property nor the owners of the property are liable for either installment of the 1958-1959 taxes for the reason that neither installment was due until dates subsequent to the trial date of August 4, 1958, and that under the decision of *County of San Diego* v. *United States,* 251 F.2d 534, section 4986, *supra,* automatically cancelled the taxes and there was no requirement, under that section, that an application for an order of the board of supervisors for cancellation be first made to said board.

It is further argued that if respondents' contention, in this respect, is contrary to the holding in the case of *City of Long Beach* v. *Aistrup, supra,* that holding is unsound and should not be followed or if followed there should be an equitable proration of the taxes for the year involved; that since there could be no award for taxes not accrued at the time of trial, respondent property owners were deprived of just compensation for their property in violation of Article I, section 14, California Constitution. Citing *Yara Engineering Corp.* v. *City of Newark,* 136 N.J.Eq. 453 [42 A.2d 632]; and *City of Los Angeles* v. *Los Angeles Pacific Co.,* 31 Cal.App. 100, 116 [159 P. 992].

Respondent State, by its attorney general, in its brief, calls attention to its complaint in which it specifically asked that all liens and incumbrances of record be satisfied out of the judgment rendered; that the interlocutory judgment entered herein on September 25, 1958, sets forth the values of the parcels sought to be condemned, as of October 22, 1957, as found by the jury. The interlocutory judgment makes provision for payment of this total sum into the court by respondent State and upon recordation of the final order of condemnation respondent property owners shall vacate and surrender possession and occupancy to plaintiff; that plaintiff

208

take title free and clear of any liens, taxes, current and delinquent. It is then ordered that there be distributed to the County of San Diego taxes due for 1957-1958, in full.

The final judgment provides that the County of San Diego possesses an interest in certain described parcels of land by reason of liens for unpaid 1957-1958 taxes but all other taxes, including 1958-1959 against said property, are cancelled.

Respondent State cites section 1246.1 of Code of Civil Procedure and *People* v. *Frahm*, 114 Cal.App.2d 61, 62 [249 P.2d 588], as prescribing the method by which the award should be distributed among the various claimants and states that it is not interested in that feature of the action and takes no position on the question whether or not appellant county is entitled to payment of the 1958-1959 taxes.

If we follow the late decision of the *City of Long Beach* v. *Aistrup, supra*, involving a somewhat similar situation, many of the points here raised are sufficiently discussed and answered. ■ It directly holds that in all cases of taxation of realty, a lien attaches annually as of noon on the first Monday in March preceding the fiscal year for which the taxes are levied. There can be no question about this point. (Revenue and Taxation Code, sections 2187 and 2192.) ■ The general rule is that title to the property does not pass in a condemnation proceeding until judgment is entered and recorded. (Section 1253, Code of Civil Procedure.) The evidence here presented does not show a previous ''physical taking'' prior to divestiture of title, as considered in some cases. See *People* v. *Joerger*, 12 Cal.App.2d 665 [55 P.2d 1269]; and *People* v. *Peninsula Title Guaranty Co.*, 47 Cal.2d 29, 32 [301 P.2d 1]. In the Aistrup case the court pointed out authorities from other states indicating various laws, as there applied in determining the effect of such ''takings.'' In some jurisdictions apportionment of taxes is authorized. ■ The majority view is that where the taxes become a lien prior to the passage of title or prior to the time title is deemed to have passed to the condemnor, they are to be deducted from the award. (45 A.L.R.2d 529-555.) The statutes, generally, in this state, regulating eminent domain procedure make it evident that the lien holder's interest should be protected in some manner. (Rev. and Tax. Code, §§ 2186, 2187, 2193, 2194; Civ. Code, § 1114. See also *City of Santa Monica* v. *Los Angeles County*, 15 Cal.App. 710, 712 [115 P. 945]; *County of San Diego* v. *County of Riverside*, 125 Cal. 495 [58 P. 81].)

■ It has been further established that where the award in a proceeding in eminent domain is paid into the court, the lien attaches to the award and is removed from the condemned land. (*Wilson* v. *Beville, supra*; *Pomona College* v. *Dunn, supra.*) ■ The obligation to pay the taxes accrues on the date the lien attaches. At the time of trial, in the instant case, there was no general law providing for apportionment of taxes from the date the condemnor takes possession, as there was in *Yara Engineering Corp.* v. *City of Newark, supra*, and *Fishel* v. *County of Denver*, 106 Colo. 576 [108 P.2d 236], relied upon by respondents. However, section 4986, amended in 1959, Statutes 1959, chapter 1023, in effect September 18, 1959, does now provide for the proration of current taxes in certain cases where the property is acquired by the state or other public agencies. It is possible the Legislature recognized the possible effect of the Aistrup decision, under the law then in effect. In *People* v. *Northcutt, supra*, this court, in effect, followed the Aistrup decision. It is true, in the federal case *County of San Diego* v. *United States, supra*, the court held that the word "may" as used in the first paragraph of section 4986 is to be read as "shall." This is supported by adequate state authority. (*City of Los Angeles* v. *Ford*, 12 Cal.2d 407, 411 [84 P.2d 1042].) However, in the federal case, there was added to this statement that the board of supervisors and the district attorney had no alternative but to cancel the taxes when the United States acquired the title after the lien date. This may be true, where, as in that case, a previous application had been made to the board of supervisors for an order directing the auditor to cancel the taxes on the property taken and the application was denied.

■ In the instant case, no such application was made and accordingly no denial or consideration of it was possible. The section itself (§ 4986, *supra*) as it existed at the time this action was filed, provided a method for making such an application to be approved not only by said board but by the district attorney and, where city taxes are involved, by the written consent of the city attorney. The section, as well as the interpretation given it in the Aistrup case (p. 54), indicates that the mere filing of an action in condemnation and acquiring of title by the State or other public agency does not automatically cancel the taxes for the entire year. See also *People* v. *Board of Supervisors*, 126 Cal.App. 670 [15 P.2d 209]; *City of Los Angeles* v. *Ford*, 12 Cal.2d 407, 411 [84 P.2d 1042].

 It is true that, in fixing compensation for condemned property, future taxes to be imposed may not be taken into account. (*County of San Diego* v. *United States, supra.*) This rule furnishes fuel for respondent property owners' argument that the award should not be reduced by payment of taxes therefrom to the county. In view of the circumstances related, the provisions of section 4986, as it then existed and the authorities of this state construing it, we conclude that the trial court was not authorized to order the cancellation of the taxes here involved. Appellant's tax lien on the award continues to exist. The portion of the judgment from which this appeal was taken is reversed.

Shepard, J., concurred.