**PEOPLE OF PUERTO RICO v. UNITED STATES (two cases).**

**Nos. 3770, 3771.**

Circuit Court of Appeals, First Circuit.

Nov. 6, 1942.

William Cattron Rigby, of Washington, D.C. (George A. Malcolm, Atty. Gen., of Puerto Rico, and Warner W. Gardner, Sol. for Department of the Interior, of Washington, D. C., of counsel), for appellants.

Norman L. Littell, Asst. Atty. Gen., and Norman MacDonald and John P. Hearne, both of Washington, D. C., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

These are appeals from an "Order Declaring Non-existence of Tax Lien" and an "Order for Delivery of Money", entered, respectively, in the above named cases by the District Court of the United States for Puerto Rico. The same question is raised by each appeal. It is whether or not, in condemnation proceedings against land in Puerto Rico instituted by the United States Government between January 15 and July 1 in any year, that is, between the date, (January 15)[1] of the assessment of real property taxes for the ensuing fiscal year, and the date, (July 1),[2] when the first installment of the tax becomes payable, is the insular government entitled to receive, out of the money deposited by the United States Government upon the taking of the land in condemnation, the amount of the taxes levied for the ensuing fiscal year but not yet due and payable in ordinary course. In each case the district court answered this question in the negative and in each case the People of Puerto Rico appealed.

Jurisdiction over these appeals is conferred upon this court by § 128 of the Judicial Code, 28 U.S.C.A. § 225.

By force of the statute, 40 U.S.C. A. § 258a, the money deposited in court by the United States Government at the time

---

[1] § 295 Political Code of Puerto Rico, Rev.St. and Codes 1913, § 2946.

[2] § 330 Political Code of Puerto Rico, Rev.St. and Codes 1913, § 2982.

when it takes title under condemnation proceedings stands in the place of the land which has been taken and from it the claims of lienholders may be satisfied. This applies to tax liens as well as to liens of other kinds but only to existing liens, not to potential ones. City of St. Louis v. Dyer, 8 Cir., 56 F.2d 842; Drake v. City of St. Paul, 8 Cir., 65 F.2d 119. The determinative question in the case at bar, then, is whether or not the People of Puerto Rico had an existing, not just a potential, lien for taxes at the time when the land in question was taken.

■ The Supreme Court of Puerto Rico does not appear to have passed upon this question. It has held that an owner's personal responsibility for the payment of taxes on real property arises on the date of assessment and that his personal responsibility persists even though on the date when the first installment of the tax falls due the property has become exempt from taxation either because of its use for a charitable purpose or its sale to a municipality. Asociacion de Maestros de Puerto Rico v. Bonet, 54 D.P.R. 536 (Spanish edition); Roig v. Bonet, 54 D.P.R. 649 (Spanish edition). But in these cases the court expressly left undecided the question of the date when the lien for the tax arises. In fact in the case cited first above the court in deciding that the owner was personally liable for the tax quoted with approval a sentence from the opinion in Wood v. McCook Water-Works Co., 97 Neb. 215, 149 N.W. 417, L.R.A.1915C, 125, to the effect that "The fact that the assessment and the tax subsequently levied thereon had not become a lien upon the property, so as to make a purchaser thereof liable for the tax, is entirely immaterial", and in the Roig case supra, the court, with reference to the taxpayer's contention that he was not personally liable because a lien for the tax arose on the date of assessment, said: "The contention that the property is subject to a preferred lien in favor of the Treasurer is not decisive, and does not absolutely exempt him from a personal responsibility." In view of these cases we are forced to decide the question presented without the aid of any opinion or even of any dictum of the Supreme Court of Puerto Rico.

■ Since tax liens are creatures of statute we must determine the time when tax liens attach in Puerto Rico by reference to the appropriate provisions of the Puerto Rican Code. Section 315 of the Political Code (Revised Statutes and Codes of Puerto Rico § 2967), after enumerating the duties of tax assessors, provides that: "The tax that is assessed for the current fiscal year * * * against each piece or parcel of real property * * * shall constitute the first lien thereon * * *." But fiscal years in Puerto Rico run from July 1 of each calendar year to June 30 of the calendar year following, Political Code § 285 (section 2937), and the assessment of property for purposes of taxation, which is required to be made on January 15 of each year, or as soon thereafter as is possible, "shall, after it has been corrected, amended and revised, as herein provided for, constitute the assessment roll for the next fiscal year." Political Code, § 295 (section 2947). Thus the assessment on real property made on January 15 of any year is for the fiscal year beginning on July 1 of that year, not for the fiscal year current at the time when the assessment was made. This the People of Puerto Rico admit in their brief, but it is contended in their behalf that certain provisions of the Mortgage Law and of the Civil Code not only conflict with, but also control, the above provisions of the Political Code and give a lien for taxes immediately upon the making of the assessment on January 15 of each year. We do not agree.

The statutory provisions relied upon, § 168 (5) and § 218 of the Mortgage Law, (Rev.Stats. and Codes, Appendix of P.R. § 6852 and § 6902); and Civil Code, Ed. of 1930, §§ 1823, 1824) all deal with the priority of tax liens over liens created by mortgages, judgments, etc., not to the time when liens for taxes arise, and furthermore they give priority only to liens for taxes which are unpaid, and admittedly there were no unpaid taxes due on the respective parcels of property at the time when they were condemned. We fail to see the pertinence of any of the statutory provisions last cited. The most that can be said is that they are ambiguous, but they are susceptible of a construction harmonizing with the admittedly unambiguous provisions of the Political Code. It is not lightly to be assumed that the legislature blundered into enacting flatly contradictory provisions in the Political and Civil Codes.

The orders of the District Court in each case are affirmed.