**DISTRICT OF COLUMBIA, Appellant,**

v.

**Samuel SUSSMAN et al., Appellees.**

**DISTRICT OF COLUMBIA, Appellant,**

v.

**ARTHUR INVESTMENT CO., Inc., et al.,**
**Appellees.**

**Nos. 18275, 18276.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 19, 1964.

Decided July 26, 1965.

Petition for Rehearing En Banc
Denied Nov. 9, 1965.

Washington, Circuit Judge, dissented.

Mr. Henry E. Wixon, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Robert E. McCally, Asst. Corp. Counsel, were on the brief, for appellant.

Mr. Henry H. Brylawski, Washington, D. C., who was on the brief for appellees in No. 18,275, argued for all appellees.

Mr. Charles Bechhoefer, Washington, D. C., was on the brief for appellee Arthur Investment Co., Inc., in No. 18,276. Mr. Daniel H. Margolis, Washington, D. C., also entered an appearance for appellee Arthur Investment Co., Inc., in No. 18,276.

Messrs. Ramsey Clark, Roger P. Marquis and S. Billingsley Hill, Washington, D. C., entered appearances for the United States.

Before BAZELON, Chief Judge, and WASHINGTON and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

These two cases present the same issue. It is this: When the Federal Government takes possession of real estate in the District of Columbia, may the condemnation court prorate the prior owner's liability to the District for real estate taxes assessed the preceding July 1, with the effect of relieving the property of such taxation for that part of the year succeeding the seizure? We say no. In allowing the District Government's appeals to reverse the District Court, we do not, however, see the issue in quite the same light as it has been presented to us by the parties. Our differences in this regard can become manifest only in the setting of the events of record and

the respective contentions as to their legal consequences.

## I

On July 26, 1963, the United States of America filed a complaint in condemnation and a declaration of taking in respect of Lot 814 in Square 379, owned by Samuel and Etta Sussman and located in the City of Washington. It simultaneously deposited in the registry of the court $200,000, representing its estimate of the just compensation required by the Fifth Amendment. As provided by law, the United States thereupon acquired the right to immediate possession of the property. On August 9, 1963, an order was entered directing the Clerk to draw a check to the Sussmans for the deposited sum, but with a further direction that the check was to be delivered to a title company with instructions to apply its proceeds to, among other things, "the payment of all taxes and assessments, due or exigible on said real property at the date of said declaration of taking * * *," with the balance to be paid to the Sussmans. They shortly thereafter moved the court for an order requiring the title company to pay to them the sum of $3,000, representing a portion of the proceeds which had been escrowed for payment of District real estate taxes assessed in that amount for the year beginning July 1, 1963. The District filed a memorandum in opposition to this motion, as did the United States, although counsel for the District assures us in his brief, without dissent from appellees, that the latter memorandum "is not pertinent to the issues raised on this appeal."

After oral argument, the District Court filed, on October 1, 1963, a memorandum opinion in which it characterized the District's position as "unfair and inequitable," and stated its view to be that property owners "should not be responsible for taxes upon their property except for the period when it was under their control and when their properties were available for their use." It directed the title company to withhold only 8.33 per cent of District property taxes assessed for the year beginning July 1, 1963, noting that this computation reflected the July 26, 1963, date of taking. It subsequently vacated its earlier order and entered a new one on October 16, 1963, the immediately relevant ordering provisions of which are set forth in the margin.[1] The appeal before us is by the District from this order.[2]

## II

A great deal of the argument before us was devoted to the question of whether taxes can be said to be "due," within the meaning of the District Court's original orders of distribution, when the payment dates preceding default have not yet arrived. Since the orders in question appear from the record to have been wholly vacated, this inquiry had a somewhat unreal aspect. The other arena of disputation was defined by the issue of whether, as of the date of taking, the District tax was a "lien" upon the property, the point of departure here also being whether a claim can be said to be a lien before the date upon which it must be paid. Our own

1. FURTHER ORDERED that Lawyers Title Insurance Corporation be and it is hereby authorized and directed to pay to the District of Columbia 8.33% of the taxes assessed for the period July 1, 1963 to June 30, 1964 on Lot 814 in Square 379 and that the District of Columbia shall accept payment of said sum in full satisfaction and discharge of District of Columbia taxes assessed for the period July 1, 1963 to June 30, 1964 on Lot 814 in Square 379 and any

liens on the award in condemnation relative to such taxes * * *.

2. The events in Number 18,276 followed a virtually identical pattern with only slight differences in the dates involved. Although a different judge entered the first disbursement order, the respective motions to release the escrowed funds were heard by the same judge, and his memorandum opinion applies to both cases. The two cases are indistinguishable for our purposes, and what we say herein relates to both.

approach has been to let the formulation of abstract legal issues wait upon a close look at the orders appealed from.

The orders do two things. They tell the escrow agent to pay to the District of Columbia only a prorated part of the taxes levied in respect of the year beginning July 1, 1963; and they direct the District of Columbia to accept those payments as being in full satisfaction and discharge of the taxes levied. A power in the courts to relieve against property taxes lawfully assessed under explicit legislative authority is, at the least, not a familiar weapon in the judicial arsenal; and in this context a clear Congressional dispensation must surely be an essential foundation for the action taken. Although we find no express reference to it anywhere in the proceedings in the District Court, we assume from the court's use in its opinion of the phrase "unfair and inequitable" that it was resting upon an authority conceived by it to reside in Section 16-628, D.C.Code (1961). This statute, which is a part of the scheme provided by Congress for the condemning of land in the District of Columbia by the Attorney General for the use of the United States, says in part that, in connection with a declaration of taking, the "court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable." The statutory prescription for condemnations by the District of Columbia of land within its confines contains an identical provision (now 16 D.C.Code § 1316), as does the provision made by Congress for federal condemnation outside the District (40 U.S.C. § 258a).

In construing this last-mentioned statute, several courts of appeals have held

that a District Court cannot prorate state property taxes on land taken by the United States, at least where such taxes have ripened into a lien on the property.[3] In Collector of Revenue within and for the City of St. Louis, Mo. v. Ford Motor Co., 158 F.2d 354 (8th Cir. 1946), the Eighth Circuit ruled that state property taxes on seized land may not be relieved against by a federal condemnation court in the absence of some local law expressly authorizing this to be done. Of the critical language in Section 258a, on the basis of which, together with "general equitable principles," the District Court had purported to act, the court said:

> This statute does not purport to give power to a Federal court to fix the amount of taxes due when the proper authorities of the state have made that decision through the administrative machinery adopted by the state for that purpose * * *.[4]

We think this view of Section 258a of the U. S. Code is equally applicable to the same words as used by Congress in Section 628 of the D. C. Code. Of course, since Congress legislates for the District of Columbia, there is no constitutional obstacle of the kind foreshadowed in the *Ford* case, where the taxing authority was the State of Missouri. But the District has many resemblances to the states, and in no aspect more than in its need for revenue to sustain and support the municipal functions that have been assigned to it by Congress. If that body had in fact intended the District Court to have the power to relieve local real estate—or the cash into which it is transmuted by virtue of a declaration of taking[5]—of liability for taxes already validly assessed against it, it could have made that plain in a way that it has not done thus far. And we would suppose that it would require the

---

3. See People of Puerto Rico v. Palo Seco Fruit Co., 136 F.2d 886 (1st Cir. 1943); United States v. 150.29 Acres of Land in Milwaukee County, 135 F.2d 878 (7th Cir. 1943); United States v. Certain Parcels of Land in Philadelphia, 130 F.2d 782 (3d Cir. 1942); Cobo v. United States, 94 F.2d 351 (6th Cir. 1938).

4. 158 F.2d at 356.

5. 16 D.C.Code § 639 (1961) provides that the money paid into court upon a declaration of taking "shall be deemed to be vested in the persons owning or interested in said lands, according to their respective estates and interests, and said money shall take the place and stand in lieu of the lands condemned."

clearest and most explicit of declarations before we would be warranted in discerning a Congressional purpose to shift a burden of this kind from the taxpayers of the United States generally, to the taxpayers of the District in particular.

For these are really the contending interests when a problem of this kind arises in the condemnation for federal use of land in the District of Columbia. An examination of the District's system of real estate taxation suggests the difficulty: (1) assessments of all non-exempt real estate are to be made annually by the first Monday in January; (2) from that day until the first Monday in April, assessments are subject to correction and equalization by a board constituted for that purpose, which task must be completed by the first Monday in May; (3) the valuations so arrived at must be approved by the Commissioners not later than July 1, and, when so approved, "shall constitute the basis of taxation for the next succeeding year;" and (4) on the basis of the approved valuation the Commissioners fix the rate needed to bring in the required revenue, and such rate is automatically levied by statute. No change in the ownership of property after July 1 affects its answerability for the tax liability fixed as of that date; and only the property itself, as distinct from the personal obligation of the record owner on the day of assessment, is subject to being levied upon to satisfy the liability. The tax itself is payable in equal installments in September and March. In short the District's annual financial plans are based in substantial part upon tax revenues estimated on the basis of the record ownership of real property on the first day of the year.

The District, in its long-term planning, must of course take account of the likelihood that some property on the local tax rolls one year will be exempt the next. The taxpayers of the District must accommodate the use of land, not only by their local government, but, to a unique extent, by the many agencies of the national government. No area is more frequently vulnerable to the power of federal condemnation. But Congress has concluded that federally-owned land in the District should not be subject to local taxation, and that consequent year-to-year variations in the tax base must necessarily be borne by the District taxpayers. And this is the sort of dislocation that the District can, to a considerable extent, make allowance for, since revenue is estimated on an annual basis. There is no evidence, however, that Congress intended that the District taxpayers should bear the additional, unforeseeable burden that would result from mid-year cancellation of tax liability, or, specifically, that it intended to arm the District Court with the authority to effect such a cancellation.

Our decision that land in the District cannot be relieved of its liability for taxes already assessed when it is the subject of condemnation by the federal government does not mean that the former owner must silently pay the taxes for the entire year even though he has use and possession of the land for only a part of it. The land in suit here was taken for the proposed new headquarters of the Federal Bureau of Investigation—a purpose in which all of the people of the United States have an interest. Any private buyer would have paid a price arrived at in arm's-length negotiation with the seller, including, under traditional practice, an apportioned part of the currently assessed property taxes. These owners, negotiating with the United States prior to its flexing of the muscle of condemnation, would have been able to insist upon the same approach. When negotiations fail and condemnation follows, we think they are entitled to see the case go to the jury in the same posture, which means that a provable element of their damages is the tax liability for the portion of the year in respect of which they have been deprived of the use of their property. We have discovered no case, and know of no reason, why the dollar amount of such tax liability, offered in evidence solely for this purpose, would

not be admissible.[6] Not to treat it so, and at the same time to relieve the owners of their liability to the District, would be to prevent the burden of this tax liability from falling where it belongs—on all the people of the United States, and not simply on those who live in the District of Columbia.

A condemnee does not have to accept in full payment for his property the sums deposited in court at the time of taking. He is entitled to try to persuade a court or jury that he has been damaged in a larger amount, and to support that claim by all relevant and competent evidence. That evidence may, in our view, include the taxes payable to the District with respect to a period when his property is in the hands of the Government. Given this opportunity, he cannot complain of action by the condemnation court to assure payment, as they fall due, of tax liabilities that run against the land in the first instance, or, alternatively, against the deposited cash which takes its place. Against this backdrop, we are strengthened in our conviction that Congress did not intend the court to do equity, within the meaning of the statute, by cancelling the District's right to receive taxes it has duly assessed and levied, and upon the basis of which it has planned its activities and budgeted its expenditures for the impending fiscal year.

The condemnees, however, urge upon us that, in any event, the court's obligation to withhold sums for the payment of District real property taxes depends upon whether such liabilities have risen to the dignity of a lien, existing on the day of the taking. Their argument is that, since on the dates of taking (i. e., July 26, 1963, and August 6, 1963) the dates on which tax payments are due (September, 1963 and March, 1964) had not yet arrived, there could be no lien. The equation pressed upon us is, thus, one of delinquency in payment, on the one hand, and lien, on the other; and some language of this kind, which this court referred to in an earlier case, is relied on heavily as sustaining this view. See Cobb v. United States, 84 U.S.App.D.C. 228, 172 F.2d 277 (1949).

But *Cobb* did not involve the problem with which we are now concerned; and the one thing that emerges with any clarity from the tangled lore of tax liens is that their existence or nonexistence for one purpose casts a feeble light indeed for the pursuit of another. We have not heretofore had occasion to scrutinize the District's system of real estate taxation in the context now before us. In looking at it from this standpoint, we note that, prior to the dates of taking, appellees' land had been assessed and the valuations approved by the Commissioners. The tax rate had been fixed, and the tax had been levied. No change in ownership among private owners would have affected the liability of the property to answer for the tax so levied. Only the time of payment had yet to arrive.

Whether this all adds up to the existence of a lien in the traditional sense, and for all purposes, we do not think it necessary to decide.[7] The statute im-

---

6. The dollar amount of the apportioned tax is, of course, something quite different from the figure at which the property is carried on the assessment rolls. The reasons for excluding the latter figure operate with greatly attenuated force, if at all, upon the admissibility of the former.

7. We recognize that the court in the *Ford Motor Co.* case, *supra*, found that the Missouri tax had become a lien on the property before the United States acquired title, and that its holding seems to rest on that finding. But we also note that the parties there had in effect stipulated the issue out of the case. And the procedures required to be followed for the creation of a lien, under Missouri law, were substantially identical to those that had already been employed by the District prior to the Government's declaration of taking in this case. For the court there noted:

> In Missouri the lien for taxes does not accrue and become a fixed encumbrance until the amount of the tax has been determined by an annual assessment of the land and an annual levy of the tax. 158 F.2d at 356. As in the District, the record owner of property in Missouri on the first day of June was liable for the taxes thereon for the following year.

mediately involved refers to the making of appropriate orders in respect of "encumbrances, liens * * * taxes, assessments * * * and other charges * * * ." For the purposes of the statutes with which we are presently concerned, that is to say, those dealing generally with federal condemnation in the District of Columbia and, in particular, with the distribution of funds paid into court pursuant to a declaration of taking, we hold that the District real property tax assessed for the year beginning July 1, 1963, was a proper subject of an order by the District Court under Section 628 providing for the payment of such tax from the deposited funds on or before the time payment would become in default. We do not believe that, in the circumstances reflected in this record, the court had power, either under Section 628 or its general equitable power, to cancel the taxes imposed on these properties for the year in question.

We remand the cases to the District Court for further proceedings not inconsistent herewith. Since the money on deposit stands in the place of the property itself, it must answer for the tax. The court's order should, accordingly, make provision for the payment therefrom to the District of Columbia of the tax in respect of the entire year. It may or may not be still open to these particular appellees to reject the condemnor's estimate of the value of the property, as represented by the amount of the deposit, and to require that the issue be tried. If they have foreclosed themselves from such trial, they have acted at their peril in respect of this appeal. If they have not, the portion of the tax allocable to the period after the taking is a provable element of damage.[8]

It is so ordered.

BAZELON, Chief Judge: I join in Judge McGowan's opinion for the following reason.

We all agree that fairness requires that the original owner of the condemned property pay real property tax only for that part of the year in which he had effective use of the property. The essential question here is whether the District of Columbia must lose the tax for the remainder of the year or whether that tax may be imposed on the Federal Government as part of its condemnation cost.

Such tax may be imposed only with the Federal Government's consent.[1] Courts have found Federal consent to State property taxes during the year of Federal purchase where the State had imposed a tax lien prior to the purchase.[2] The District tax statute does not explicitly create such

Liability depended not on continued ownership, but on ownership on the assessment date.

In any event, the principle relied on by the Eighth Circuit does not, in our view, depend for its applicability on whether the local tax has become a lien, but on the fact that the proper local authorities have determined the amount of tax due, alerted the owner, and budgeted accordingly. See text accompanying note 4 supra.

8. We leave undisturbed the provision of the District Court's order that reads: "[N]o penalty or interest for nonpayment of said taxes when due shall be assessed by the District of Columbia for the period the matter of said taxes is pending before the Court." By virtue of the fund on deposit in the District Court, the District has throughout been assured of collecting the taxes ultimately determined to be due it. And it was the District's decision to appeal that postponed final resolution of that question.

1. See, e.g., United States v. City of Detroit, 355 U.S. 466, 469, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958). Compare District of Columbia v. John R. Thompson Co., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953).

2. See, e.g., United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941); United States v. Davidson, 139 F.2d 908 (5th Cir. 1943); Collector of Revenue Within and for the City of St. Louis, Mo. v. Ford Motor Co., 158 F.2d 354 (8th Cir. 1946); Moses Lake Homes, Inc. v. Grant County, 276 F.2d 836 (9th Cir. 1960), reversed on other grounds, 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66 (1961).

lien,[3] and this might be dispositive in favor of Federal exemption if a State tax were at issue here; "[t]here is good ground for avoiding the appearance of any exercise of power over the property of another sovereign, even by means of an earlier reservation which would be lawful, if express."[4] But an explicit lien is not determinative here since conflicting sovereignties are not involved; Congress legislates both for the Federal Government and the District.

The tax statute which Congress enacted for the District expresses a policy that property taxes should be fixed at the beginning of the tax year to permit fiscal planning on the basis of clearly anticipated revenues. The statute provides that real property must be valued and assessed before the tax year begins.[5] And it is well established under the statute that property purchased by tax-exempt institutions, such as universities and churches, remains taxable during the year of purchase.[6] This congressionally sanctioned policy favoring certainty of tax revenues would be significantly undermined if the Federal Government's tax exemption began at the moment it took title to property during the tax year.[7] I therefore find that Congress, in enacting the District tax statute, has implicitly consented to taxation during the tax year in which the Federal Government takes property in the District.

WASHINGTON, Circuit Judge (dissenting):

I cannot agree with the majority opinion or with the views stated in the separate comments of Judge Bazelon. These violate in my judgment two statutes enacted by Congress, Sections 16–628 [1] and

---

3. In Cobb v. United States, 84 U.S.App. D.C. 228, 229, 172 F.2d 277, 278 (1949), this court stated that the District real property tax "lien does not arise prior to the occurrence of a delinquency." But *Cobb* involved the District's attempt to defeat a Federal lien imposed for delinquency in Federal taxes, and it might be distinguished on the ground that Federal tax liens have traditionally been given more rigorous protection against state claims than Federal immunity from local property tax. Compare United States v. Reese, 131 F.2d 466 (7th Cir. 1942), with United States v. State of Alabama, *supra*, note 2.

4. United States v. City of Buffalo, 54 F. 2d 471, 475 (2d Cir. 1931) (Learned Hand, C.J., concurring).

5. D.C.Code §§ 47–709, 47–1209 (1961).

6. Washington Mosque Foundation v. District of Columbia, 74 Wash.L.Rptr. 1189 (D.C.Bd.Tax App.1946); Bethel Pentacostal Tabernacle v. District of Columbia, 106 A.2d 143 (D.C.Mun.Ct. of App. 1954). *Cf.* District of Columbia v. The Salvation Army, 105 U.S.App.D.C. 85, 264 F.2d 371 (1959); District of Columbia v. George Washington University, 104 U.S.App.D.C. 324, 262 F.2d 36 (1958).

7. Compare the speculative State interest protected in United States v. State of Alabama, *supra*, note 2. In that case, the State statute created a lien before

the tax was assessed or the property even valued, and the Supreme Court ruled that land purchased by the Federal Government during the tax year was subject to the State tax for that year.

1. The section was enacted on March 1, 1929, as part of the Act to provide for the acquisition of land in the District of Columbia for the use of the United States, 45 Stat. 1417. Insofar as pertinent here, it reads:

"The petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

\* \* \* \* \*

"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

"Upon the filing of said declaration of taking and of the deposit in the registry of the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified *in said declaration, shall vest in the United States of America*, and said lands shall be deemed to be condemned

47–801a(a) [2] of the District of Columbia Code, and patently have their basis in the view, frequently expressed, that the United States equitably should pay realty taxes on the property owned by it in the District. While I have sympathy with that view, I cannot join in a holding that the United States can be made to pay its apportioned share of the taxes assessed against the condemned property for the year in which the condemnation occurred. To do so is to disregard the congressional mandate expressed in the two statutes.

1. On the dates of the taking in these cases the United States deposited with the court the estimated "just compensation for the land taken," pursuant to Section 16–628 of the D. C. Code. This statute does not provide that the United States shall pay anything other than just compensation for the land taken, i. e., "the value of the property as of the date of taking," plus 6% interest from the date of taking to the date of payment. The majority says that the cases must be remanded to the District Court so that the former owners of the property, if that course is still open to them, may prove the amount of the damage suffered by having to pay the realty tax attributable to the portion of the taxable year during which the property was owned by the tax-exempt United States. If such a hearing has not been foreclosed and can still be held, I have no doubt that the court or a jury would find that the former owner is damaged by having to pay such part of the assessed taxes, but I fail to see how the District Court could order the United States, in the face of Section 47–801a(a) of the D. C. Code, to reimburse the former owner for such tax payment. Even if the order were cast in terms of "damage" rather than taxes, the United States is not required by Section 16–628 to pay "damage" of this nature.[3] See cases cited in footnote 4. In this connection the United States has filed with us a memorandum, disclaiming any legal concern in the way the fund now deposited with the District Court is distributed, but firmly stating, supported by ample authority,[4] that outstanding taxes or liens

and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the registry.

\* \* \* \* \*

"Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

2. This reads:
"The real property exempt from taxation in the District of Columbia shall be the following and none other:
"(a) Property belonging to the United States of America.
\* \* \* \* \*."

3. In general, the value required to be paid by the United States is determined by the fair market value, absent special circumstances justifying another approach to ascertain the property's value. See United States v. Miller, 317 U.S. 369, 373–374, 63 S.Ct. 276, 87 L.Ed. 336 (1943); United States v. Virginia Electric & Power Co., 365 U.S. 624, 633, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961), and cases there collected. No authority is cited by the majority which would justify imposing an obligation on the United States to reimburse the former owner of the property for taxes, or damage suffered by having to pay taxes, not equitably owed.

4. United States v. 25.936 Acres of Land, 153 F.2d 277 (3d Cir. 1946); Washington Water Power Co. v. United States, 135 F.2d 541, 543 (9th Cir.), cert. denied, 320 U.S. 747, 64 S.Ct. 50, 88 L.Ed. 444 (1943); United States v. 150.29 Acres of Land, 135 F.2d 878 (7th Cir. 1943); Cobo v. United States, 94 F.2d 351, 353 (6th Cir. 1938); cf. Cohen v. Wasserman, 238 F.2d 683, 687 (1st Cir. 1956.)

do not enlarge the liability of the United States to pay anything above the value of the property. In view of the position taken by the United States in this case, I think the solution proposed in the majority opinion will be no solution at all, since in my view the position of the United States would have to be sustained. Unless the majority is willing now to declare, contrary to the statute and without citation of any legal authority, that the United States would be liable to pay to the former property owners as damage its apportioned share of the District realty tax, in addition to the fair value of the property, and that collection of the "damage" from the United States can be enforced, the remand would only waste time and in the end accomplish nothing.

2. Recognizing this problem, Judge Bazelon purports to find that Congress has implicitly consented that the United States be required to pay its apportioned share of the District realty tax during the tax year in which it takes property in the District. I cannot agree in view of the complete exemption from taxation given to "property belonging to the United States" in Section 47–801a(a). The property involved here belonged to the United States from the date of the filing of the declaration of its taking and the deposit with the lower court of the estimated just compensation for it, since it acquired title and possession on that day. Had Congress intended to consent that the United States be liable for an apportioned share of the taxes assessed by the District for the year in which the condemnation occurs, it would have been simple to have provided so plainly. Congress did not do so but instead left the complete exemption of the United States untouched.

It is said that implicit consent to taxation in the year of the condemnation is to be found because the congressional policy favoring certainty of tax revenues in the District would be undermined significantly were consent not implied. We are not advised as to whether the undermining would be in a significant amount over-all, but Federal consent is hardly to be implied for such a reason and no authority is cited for so holding. Although Judge Bazelon states that "Courts have found Federal consent to State property taxes during the year of Federal purchase where the State had imposed a tax lien prior to the purchase," the cases cited in footnote 2 of his opinion do not support the statement.[5]

3. Giving recognition to the fact that the United States has by statute been exempted from the payment to the District of Columbia of any realty tax on property owned by it in the District,[6] the

5. United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941), held that where the State had imposed a lien for taxes prior to the purchase by the United States, the lien could not be *enforced* against the United States without its consent (p. 281), and that proceedings in which the State undertook to hold tax sales of the property and to issue certificates of purchase of the property to itself were void (pp. 282–283). The United States was held, however, not to be entitled affirmatively to have the liens removed as clouds upon its title. United States v. Davidson, 139 F.2d 908 (5th Cir. 1943), is similar, the court holding that the State of Texas could not foreclose a tax lien imposed before the United States acquired the property without statutory consent by the United States, but that the United States was not entitled affirmatively to an injunction against

collection. Collector of Revenue Within and for the City of St. Louis, Mo. v. Ford Motor Co., 158 F.2d 354 (8th Cir. 1946), was a case where the entire State tax lien was held payable from the fund paid into court by the United States as compensation for the land taken. The condemnee thus was required to pay the whole amount of the lien from the compensation it received, even though it owned and occupied the property for less than a year. See further *infra*. Moses Lake Homes, Inc. v. Grant County, 276 F.2d 836 (9th Cir. 1960), was concerned with a specific section (§ 511) of the Housing Act of 1956; whatever was there said related to the language contained in that statute.

6. Since Congress created the statutory exemption from taxation, it is not to be supposed, as the majority appears to do, that in Section 16–628 it intended to em-

District Court in my view had the power under Section 16–628 of the Code to enter the order awarding to the District only that part of the realty taxes assessed for the whole fiscal year as is applicable to the period during which the taxable former owners held the property.[7] It was specifically empowered by this section to make "just and equitable" orders in respect of taxes, and I think that the one on appeal was such an order.

Section 16–628 is concerned solely with condemnation by the United States of land in the District of Columbia, and when it speaks of "taxes" it must include taxes levied with respect to the condemned land by the District of Columbia.[8] The most obvious occasion on which the District Court might be called upon to enter a "just and equitable" order with respect to such taxes is the situation presented here. Congress then must have had this situation in mind and have intended to empower the District Court to prorate realty taxes equitably as between the former owner and the United States— the two parties essentially involved in a condemnation suit falling under this section—at least where no lien has attached to the realty in respect of the tax, as I think is true here. See *infra*. Insofar as realty taxes go, the provision could have little other function.

The majority cites Collector of Revenue Within and for the City of St. Louis, Mo. v. Ford Motor Co., 158 F.2d 354 (8th Cir. 1946), as authority for its holding that the District Court was not authorized to prorate the realty tax for the entire year. That case was decided under 40 U.S.C. § 258a, enacted in 1931, which, like the previously enacted Section 16–628 of the District of Columbia Code, empowers the District Courts in other circuits to make just and equitable orders in respect of liens and taxes on real property condemned by the United States within their jurisdictions. There it was conceded that a lien for the St. Louis city taxes had attached to the condemned property prior to the taking of title and possession by the United States, and the holding was that the lien had been transferred to the fund deposited with the court upon the taking of the property and that in that situation the District Court was not empowered to reduce the amount of the lien on the fund.[9]

The majority opinion includes a quotation from the *Ford Motor* case stating that the statute there involved does not purport to empower a Federal court to fix the amount of taxes due to a state. This of course is a necessary conclusion on constitutional grounds but hardly pertinent to the decision under the facts there, and the court there continued with

power the District Court to make equitable orders which would take away the statutory exemption.

7. The Committee Reports shed no light on the intention of Congress with respect to the authority to make just and equitable orders regarding taxes and liens. H.Rep.No. 1693, 70th Cong., 1st Sess. (1928); S.Rep.No. 1431, 70th Cong., 2d Sess. (1929). And there was no debate on the floor which illuminates the matter. See 69 CONG.REC. 10745–49 (70th Cong., 1st Sess.); 70 CONG.REC. 3944 (70th Cong., 2d Sess.).

8. I can conceive of no taxes on the condemned real estate which might exist, other than those levied in the name of the District. No state has the power to, and the United States does not, levy real property taxes, as such, on realty located in the District of Columbia. However,

the United States or a state might acquire a lien on District realty in some other manner.

9. To the same effect are Cobo v. United States, 94 F.2d 351 (6th Cir. 1938); United States v. Certain Parcels of Land in Philadelphia, 130 F.2d 782 (3d Cir. 1942); United States v. 150.29 Acres of Land, 135 F.2d 878 (7th Cir. 1943); People of Puerto Rico v. Palo Seco Fruit Co., 136 F.2d 886 (1st Cir. 1943). Cf. also United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941); City of Long Beach v. Aistrup, 164 Cal.App.2d 41, 330 P.2d 282 (1958); People v. Northcutt, 171 Cal. App.2d 620, 340 P.2d 1043 (1959); Petition of Suffolk County, 14 Misc.2d 1008, 183 N.Y.S.2d 836 (Suffolk County Ct. 1958); State v. Clyne, 175 Cal.App.2d 204, 345 P.2d 474 (1959).

the statement that the statute "does not empower the court to invalidate in part a valid entire tax lien," citing United States v. Certain Parcels of Land in Philadephia, *supra*. In any case, the majority's quotation is not consistent with the views of other Federal appellate courts which have recognized under that statute that realty taxes, which have not become a lien under local law prior to the condemnation by the United States, may be apportioned.[10] As will appear *infra*, the real estate tax in issue here had not become payable and no lien for the tax had attached to the condemned property prior to the date the United States took title and possession.

Moreover, in the *Ford Motor* case, not only had a lien attached to the property prior to the taking, but the state statute provided that the person owning or holding the realty on the assessment date is liable for the taxes thereon for the entire year. There is no such provision in the District statutes. Although property is to be assessed in the name of the owner (D. C. CODE § 47–701 (1961)) and the owner is to be notified, subsequent to July 1 of the tax year, of the amount of the assessment and the dates for payment (D. C. CODE § 47–1001a), this court long

ago pointed out that the assessment does not create a personal liability, but only a charge upon the land. Tumulty v. District of Columbia, 69 App.D.C. 390, 395, 102 F.2d 254, 259 (1939). Furthermore, it is a customary practice here to prorate the assessed taxes on the basis of the pro rata part of the year owned, if the property changes hands during the tax year, and Congress had, prior to the condemnation statute concerning us, worked this practice into the statutory scheme in at least two comparable instances. See §§ 47–409, enacted in 1925, and 47–715, enacted in 1921.[11] I think it clear that Congress was familiar with the general custom of apportioning taxes in the District; and that it must have intended that the power given in Section 16–628 to make just and equitable orders in respect of taxes is to include the power to prorate realty taxes equitably, at least to the extent they have not become a lien.

Finally, it is very significant that the statute under which the *Ford Motor* and similar cases were decided, insofar as liens for state or local taxes which have attached before the condemnation are concerned, involves a conflict between the powers of the Federal and state govern-

---

10. See United States v. Certain Parcels of Land in Philadelphia, 130 F.2d at 783–784, stating:
"The correct test as to whether there can be apportionment, we think, is whether the tax was a lien on the property at the time title vested in the government. In this case, it is admitted that taxes for the entire year 1941 were assessed on January 1, 1941. They were, by express terms of the statute, liens on the property from that date forth. This rule would seem to settle the question of apportionment in the negative." (Footnotes omitted.)
See also People of Puerto Rico v. United States, 131 F.2d 151, 151–152 (1st Cir. 1942), cert. denied, 318 U.S. 775, 63 S.Ct. 832, 87 L.Ed. 1144 (1943), as follows:
"By force of the statute, 40 U.S.C.A. § 258a, the money deposited in court by the United States Government at the time when it takes title under condemnation proceedings stands in the place

of the land which has been taken and from it the claims of lienholders may be satisfied. *This applies to tax liens* as well as to liens of other kinds *but only to existing liens, not to potential ones.*" (Emphasis supplied.)
And see United States v. 25.936 Acres of Land, 153 F.2d 277 (3d Cir. 1946), and cases collected in 45 A.L.R.2d 557.

11. Section 47–409 provides in effect that, when the United States sells real property in the District, the property "shall be liable to taxation by the District from the day of sale." Section 47–715 deals with tracts of land not subdivided when taxes or assessments are levied or due, and provides that upon application therefor, such taxes or assessments levied or due against the entire tract "shall be redistributed so that the owner of * * * [a parcel of the tract] may pay the proportion of such entire taxes or assessments equitably chargeable thereon."

ments.[12] In deciding those cases, the courts were undoubtedly influenced by that consideration. But our statute does not present this conflict between Federal and states' rights. The District of Columbia is a Federal district. Congress is the legislative body which provides for the assessment and collection of District taxes and which enacted the condemnation statute in question in this case. Where Congress in this situation has given the District Court the power to make equitable orders with respect to taxes, I believe for reasons already given that—at least in the absence of a lien— that power includes the right, if not the duty, to require the condemnee to pay only the District realty taxes which are due for the part of the year during which he held the property. If the District revenue suffers to any alarming extent under such a rule, the remedy lies with Congress.

4. Although the real estate tax for the fiscal year beginning July 1, 1963, was assessed as of that date, it was not payable until later—one-half during September, 1963, and one-half in March, 1964. D.C.CODE § 47–1209 (1961). We held in Cobb v. United States, 84 U.S.App. D.C. 228, 229, 172 F.2d 277, 278 (1949), that the lien for real estate taxes in the District " 'does not arise prior to the occurrence of a delinquency' " in payment. Our decision in *Cobb* rested on the holding in Commissioner of Internal Revenue v. Rust's Estate, 116 F.2d 636, 638 (4th Cir. 1940), where the statutory provisions were thoroughly reviewed, and we quoted with approval the conclusion there reached. These decisions in my view are controlling, and are clearly correct.

"A lien for taxes on real estate is a creature of statute, and attaches only when the legislature prescribes." Commissioner of Internal Revenue v. Rust's Estate, *supra* at 638. The instant case must be judged in the light of this precept, which so far as I am aware has

never been disputed and cannot be here, where the realty tax itself is dependent entirely on the statutory provisions. It is not open to this court to ignore the statutory lien provisions and to say, as the majority opinion does, that whether the statutory provisions relating to assessment of the realty tax add up to the existence of a lien "in the traditional sense, and for all purposes, we do not think it necessary to decide." I find in the opinion no satisfactory reason for such a view, particularly since reliance is placed on the *Ford Motor* case, which indisputably turned on the fact that the state lien had attached prior to the taking by the United States. Moreover, I think it is necessary that there be a fixed rule as to when the District tax lien arises and takes effect, on which other persons may rely before they deal with the record owner. And I do not think that it is open to this court to suggest, in the face of the *Cobb* and *Rust* decisions and the statutes which I will next review, that the lien may arise before there is a delinquency in payment of the real estate taxes. Such a result would require specific legislative provision therefor.

The District of Columbia Code does not provide that real estate taxes generally shall be a lien as of any specified date on the real property on which they are assessed. The only references in the Code to a lien for such taxes are those in Sections 47–1003 and 47–1011. Section 47–1003, enacted in 1898, relates to the further procedure following a tax sale with respect to real estate taxes "levied and in arrears" (see Section 47–1001), and contains a proviso that failure on the part of the District "to enforce the liens acquired aforesaid shall not release the property from any tax whatsoever that may be due the District." The reference to "liens acquired aforesaid" is ambiguous since there is no prior reference to the acquisition of a lien, but in the context it must relate to liens with respect to real estate taxes "levied and in arrears." Section 47–1011, enacted in 1936, relates to en-

12. Indeed, the majority recognizes this and relies on a quotation from the *Ford Motor* case which points up the conflict.

forcement of the lien for real estate taxes and in terms applies only to property not redeemed within two years after the District bid it in on a "sale for nonpayment of taxes or assessments of any kind whatsoever." Neither Section 47–1003 nor Section 47–1011 fixes or suggests, as the effective date of the lien, any date prior to a delinquency in payment of an assessed tax.[13] To be sure, neither section says in so many words that the lien does not arise before a delinquency in payment: but that is the only reasonable inference from the statutory terms, as we concluded in the *Cobb* case. And it is of some significance that Congress later provided with respect to the lien for personal property taxes,[14] and for all other taxes,[15] that the lien does not arise until after the date of payment arrives, until after the tax has not been paid within 10 days after notice and demand for payment, and until the collector of taxes has filed a certificate of nonpayment with the District Court. The legislative plan seems clear that the District shall have

no tax lien of any kind until after there has been a failure to pay on the due date (or within 10 days after notice and demand for payment) and, in the case of all taxes except perhaps realty taxes, until after a notice or certificate of delinquency has been put on record in the District Court.

I would hold that the District had no lien on the real estate here when the United States took title and possession and that, whether or not the doctrine of Collector of Revenue within and for the City of St. Louis, Mo. v. Ford Motor Co., *supra*, as to the apportionment of a state's lien for real estate taxes would be pertinent with respect to the different statute involved here, that case has no application in our case because there was no lien when the United States acquired the realty.

5. In closing I note that in footnote 8 of the majority opinion, the majority has made a satisfactory resolution of the penalty and interest question there dealt with. I concur in this disposition.

13. Clearly the tax could not be "in arrears" and there could be no sale for nonpayment of the tax or assessment until after the dates fixed for payment and until after the taxes assessed had not been paid at those times. This means there could be no arrearage and no sale for nonpayment prior to October 1 as to one-half of the assessed tax and prior to April 1 as to the other half of the tax. And it is only after nonpayment of one-half of the assessment during the month fixed for payment of that half that the Commissioners may under Section 47–1011 petition the District Court to enforce the lien.

14. Section 47–1406, enacted in 1937, reads: "In case of the neglect or refusal of any person to pay a personal-property tax within ten days after notice and demand, the collector of taxes, or the person designated by him, may file a certificate of such delinquent personal tax with the clerk of the United States District Court for the District of Columbia, which certificate from the date of its filing shall have the force and ef-

fect, as against the delinquent person named in such certificate, of the lien created by a judgment granted by said court, which lien shall remain in force and effect until the taxes set forth in said certificate, with interest and penalties thereon, shall be paid and said lien may be enforced by a bill in equity filed in said court."

15. Section 47–312, enacted in 1954 reads: "In addition to any other methods or devices or both provided by law or regulation for the collection of various taxes (except real property taxes) due the District, any tax imposed by any law applicable to District taxes, and penalties and interest thereon, when such tax has become due and payable, may be collected in the manner provided by law for the collection of taxes due the District on personal property in force at the time of such collection; and liens for all such taxes, penalties, and interest may be acquired in the same manner that liens for personal property taxes are acquired."