TOWNSHIP OF SPRINGFIELD, A MUNICIPAL CORPORA-
TION, PLAINTIFF, v. UNION COUNTY PARK COMMIS-
SION AND COUNTY OF UNION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided October 11, 1978.

334

*Mr. Edward J. Fanning* for plaintiff (*Messrs. Morley, Cramer, Tansey, Haggerty & Fanning,* attorneys; (*Mr. Edward J. Fanning* on the brief).

*Mr. John H. Schmidt, Jr.* for defendant Union County Park Commission (*Messrs. Lindabury, McCormick & Estabrook,* attorneys; *Mr. Schmidt* on the brief).

*Mr. William J. McCloud,* Union County Counsel, for defendant (*Mr. McCloud* on the brief).

FELLER, J. S. C. (retired, temporarily assigned on recall). This is an action in lieu of prerogative writs. Plaintiff Springfield Township seeks a declaratory judgment that taxes are due and owing to it and directing payment of same by defendants.

On or about July 31, 1974 the Union County Park Commission (Commission) filed a complaint in condemnation for certain parcels of real property located in Springfield Township. The premises were privately owned by the Celanese Corporation at the time the complaint was filed. Final judgment fixing compensation was entered July 21, 1976.

The Commission did not serve the Springfield Tax Assessor with a separate notice of the condemnation or acquisition of said parcel, in accordance with *N. J. S. A.* 54:4–3.3b. It has failed and refused to pay taxes imposed by the township on the real property in question.

Plaintiff contends that applicable case law and statutory authority, namely *N. J. S. A.* 54:4–3.3a and *N. J. S. A.* 54:4–3.3b requires payment of these taxes for the balance of the year 1976 and for the year 1977.

The above statutes read as follows:

54:4–3.3a. Real property acquired by the State or by a State agency or by an authority created by the State, shall not be exempt from taxation during the period following such acquisition as prescribed in this act. [*L.* 1971, *c.* 370 § 1]

54:4–3.3b. Where real property is acquired by the State or by a State agency or by an authority created by the State, by purchase, condemnation or otherwise, such property shall become tax exempt on January 1 of the calendar year next following the date of acquisition, provided that the tax assessor of the municipality in which such property is located is given written notice of the acquisition by certified mail on or before January 10 of said calendar year next following; provided further that if real property is acquired between January 1 and January 10 inclusive, and the prescribed notice is given on or before January 10, such real property shall become tax exempt as of the date of acquisition. [*L.* 1971, *c.* 370, § 2]

Defendant Commission contends that the above statutes are not applicable, that it is not liable for taxes under the same and that it is immune from liability under the terms of *N. J. S. A.* 40:37–101, entitled "Establishment and location of parks; acquisition of property; rules and regulations":

The commission may acquire, maintain and make available to the inhabitants of the county wherein it is appointed, and to the public, parks and open spaces for public resort and recreation; may locate such public parks and places within the limits of the county; and for these purposes may take in fee or otherwise, by purchase, gift, devise or eminent domain, lands or any right or interest therein for public parks and open spaces within the county. Deeds of conveyance therefor shall be made to the commission by its corporate name, and

it shall preserve, care for, lay out and improve any such parks and places, and make rules for the use and government of the same. The real estate so taken, and all buildings and improvements which may be placed thereon shall be exempt from all taxes, assessments and municipal liens. [*L.* 1907, *c.* 95, § 2]

As a result of the decision in *Union Cty. Park Comm'n v. Union Cty.,* 154 *N. J. Super.* 213 (Law Div. 1976), aff'd o.b. 154 *N. J. Super.* 125 (App. Div. 1977), certif. den. 75 *N. J.* 531 (1977), the Union County Park Commission ceased to be an autonomous body as of June 1, 1978 and became a department or division of Union County.

An amended complaint was filed joining Union County as a party defendant. An answer was filed and an amended pretrial order executed in which Union County adopted all of the contentions and arguments previously presented to the court by the Commission.

There are no issues of material facts involved.

I

In *East Orange v. Palmer,* 47 *N. J.* 307 (1966), the court held that tax exemptions of the State and Highway Authority do not take effect as of the moment of acquisition of real property for highway purposes but rather liability of the State and Highway Authority for local real property taxes remains for balance of tax year regardless of whether acquisition is by conveyance or condemnation. The court stated:

But more important to relieve property which becomes exempt in mid-stream from the taxes for the balance of the year, at least where the acquisition is by an entity other than the municipality itself or a coterminous taxing district would put the burden represented by those taxes solely on those who own property in the municipality, rather than on all those in the larger area sharing in the public benefit — here highways open to the use of the people of the whole State — as would be the case if the acquiring public entity were held responsible for the remaining taxes as part of the cost of acquisition. [at 319]

The court further stated that, conversely, even if the acquisition were by the municipality or a coterminous taxing district, cancellation of tax liability for the balance of the year can, to some extent at least, deprive other taxing entities, for which the municipality is the collector, of the timely availability of their shares of such taxes and thus impose the burden of a purely local acquisition upon the people of a larger nonbenefitting area. The court cited *District of Columbia v. Sussman,* 122 *U. S. App. D. C.* 207, 352 *F.* 2d 683 (D. C. Cir. 1965), where, on similar reasoning in a case of condemnation by the United States of property in the District of Columbia after the assessment date, the court held in effect that liability was to remain on the condemnor for District taxes for the balance of the year of acquisition even though such taxes had not become a lien at the time the lands were taken.

*East Orange, supra,* involved property which the State acquired. However, as the court indicated *supra,* it might also involve property acquired by a municipality or a coterminous taxing district. Since the court held that the State was liable for taxes for the remainder of the year of acquisition, it was not necessary for the Legislature to adopt *N. J. S. A.* 54:4–3.3a and 54:4–3.3b unless it was for a specific purpose.

It would seem, after reading the statute as well as the history of the legislation, that the apparent intent was to apply the above procedures to local real property acquired by the State and not by local park commissions, a county or municipality. In *East Orange* the court stated:

Therefore we conclude that there is nothing in present legislation or case law interpreting it which indicates a legislative intent that tax exemption shall take effect at the moment of acquisition. On the contrary, it is our conviction that the tax and local finance structure establishes the intention that liability should remain for the balance of the tax year regardless of whether the acquisition is by conveyance or condemnation, but that it should not be imposed upon the former owner. [47 *N. J.* at 326–327]

It is evident that the court was referring to acquisition by the State because there was and is legislation indicating a legislative intent that tax exemption should take effect at the moment of acquisition where real property is acquired by a park commission. See *N. J. S. A.* 40:37–101, *supra*. The said statute provides that the real estate so taken and all buildings and improvements which may be placed thereon shall be exempt from all taxes and municipal liens.

A fiscal note to Senate Bill 124, dated May 7, 1970, states that the bill provides that real property *acquired by the State* shall not be tax exempt until the next January 1, if acquired before October 1. The note further states that the Division of Taxation feels that it is not possible to estimate what this *would cost the State* should this legislation be enacted. It was pointed out, however, that as a rule of thumb annual taxes amount to 6% of the cost of acquisition but in view of a 1966 court decision the State might well be obligated to bear such costs without regard to whether this legislation is enacted. A fiscal estimate for the above bill was submitted.

Senate Bill No. 124 was subsequently approved on December 30, 1971 and became *chapter* 370 of the *Laws of 1971* (*N. J. S. A.* 54:4–3.3a and 54:4.3.3b). Thus, the provisions of this statute — as stated *supra* — apply to real property acquired by the State or by a state agency or by an authority created by the State.

Common terms in a statute are presumed to be used in their common sense meanings. *Wager v. Burlington Elevator Inc.*, 116 *N. J. Super.* 390, 396 (Law Div. 1971); *Newark v. Civil Service Dep't*, 68 *N. J. Super.* 416 (App. Div. 1961); *Fedi v. Ryan*, 118 *N. J. L.* 516 (Sup. Ct. 1937). The Legislature is deemed to have intended what it said and the court may not construe a contrary concept. *Harlan v. Fidelity & Cas. Co.*, 139 *N. J. Super.* 226, 229 (Law Div. 1976). Resort may be had to long range usage, contemporaneous construction and practical interpretation in construing statutes to ascertain the meaning of technical terms, to con-

firm a construction deduced from the language, to explain a doubtful phrase or when the meaning has been obscurely expressed. *Civil Service Dep't v. Clark,* 15 *N. J.* 334, 341 (1954); *Suburban Elec. Co. v. Elizabeth,* 59 *N. J. L.* 134 (Sup. Ct. 1896). There was no indication that long-range usage, contemporaneous construction and practical interpretation of *N. J. S. A.* 40:37–101, *supra,* supported plaintiff's interpretation of this statute. Furthermore, there also was no indication that long-range usage, contemporaneous construction and practical interpretation of *N. J. S. A.* 54:4–3.3a and *N. J. S. A.* 54:4–3.3b applied to political divisions of the State, as plaintiff contends.

## II

It is very evident that the Union County Park Commission was not an autonomous body or commission of the State. "State" is defined in the statute (*N. J. S. A.* 1:1–2) as follows: "The word 'state' extends to and includes any state, territory or possession of the United States, the District of Columbia and the Canal Zone." The statute not only provides for real property acquired by the State but also by a state agency or by an authority created by the state.

"State Agency" is not defined in *N. J. S. A.* 54:4–3.3 *et seq.* The Legislature has failed to give an express meaning or a statutory pronouncement of that term. In simple and ordinary parlance, a state agency is an "administrative arm" of the Executive Branch of the State. State agencies are not ordinarily considered to be independent, autonomous authorities created by the Legislature. *Garden State Pkwy. Employ., etc. v. N. J. Highway Auth.,* 105 *N. J. Super.* 168 (App. Div. 1969).

The Union County Park Commission is not an administrative arm of the Executive Branch of the State. Although the establishment of park commissions is expressly authorized by the Legislature under *N. J. S. A.* 40:37–96 *et seq.,* their actual existence is the direct result of county-

wide referendum concerning the creation of a park commission, approved by the voters of the particular county. The Commission was expressly created in such fashion, following an affirmative vote for a county park commission by the voters of Union County. It is, therefore, clear that the Commission is not a "state agency," as denoted by the ordinary meaning of that term. As stated in the decision of *Union Cty. Park Comm'n v. Union Cty., supra*:

> Plaintiff contends that the Park Commission is a creature of the State just as counties and municipalities are creatures of the State. As such the Park Commission is not a creature of the County. This court agrees with this contention. The Park Commission has been created by state legislation the same as counties and municipalities. However, at the same time the Park Commission just as counties and municipalities is subject to local control in the internal management of its affairs.
>
> In *Parks v. Union Parks Commission*, 7 *N. J. Super.* 5 (App. Div. 1950), the court characterized the Park Commission as an agency of the county for purposes of certain employer benefits. However, in *Wall v. Hudson Park Comm.*, 80 *N. J. Super.* 372 (App. Div. 1963), a later case, the court held that the Park Commission was not an agent of the county. However, there is no indication that the said commission is an agent of the State and not subject to local control. [15 *N. J. Super.* at 233–234]

Thus, it appears that the Union County Park Commission is part of the governmental structure of Union County.

It is significant that the statute does not include the words "county," "county park commission" or "municipality." Nor does it use the words "political division of the state."

Although the creation of the Union County Park Commission was authorized by the State, that does not convert it into a state agency. In fact, the character and functions of the Commission point toward a finding of non-state agency status. This proposition is further supported by the fact that the Commission was created by a county-wide, and not a state-wide, referendum. Thus, the Commission is an adjunct of Union County, which was given permission to exist by the State. See *Parks, supra*.

Any attempt to characterize the Union County Park Commission as "an authority created by the State" should also fall under a plain and ordinary interpretation. It was previously noted that the Commission is authorized by state law, but created by county referendum, to carry out county functions. State authorities, on the other hand, are not only authorized by applicable laws but mechanically established by the State Legislature. *Garden State Pkwy. Employ., etc., supra.* See also, *N. J. S. A.* 27:12B–4 (*New Jersey Highway Authority*); *N. J. S. A.* 5:10–4a (*New Jersey Sports and Exposition Authority*). They are also considered instrumentalities of the State created for the purpose of carrying out state functions. *State v. Maas & Waldstein Co.,* 83 *N. J. Super.* 211 (App. Div. 1964); *McCutcheon v. State Bldg. Auth.,* 13 *N. J.* 46 (1953).

The most striking difference between a state authority and a county park commission is the power of an authority to borrow money through the issuance of negotiable bonds. *McCutcheon, supra; N. J. S. A.* 5:10–5(g); *N. J. S. A.* 27:23–5(f); *N. J. S. A.* 27:12C–11(g); *N. J. S. A.* 27:12 B–5(h). The Union County Park Commission has no such power. Outside of funds generated by revenue-producing facilities, the Commission is funded solely through appropriations by the board of chosen freeholders. *N. J. S. A.* 40:37–129.

There is also a large difference in the manner of selection of the commissioners. The commissioners of a state authority are appointed by the Governor with the consent of the State Senate, whereas the commissioners of a county park commission are appointed by the county board of chosen freeholders. Cf. *N. J. S. A.* 40:37–97; *Union County Park Comm'n, supra.*

Nor can it be contended that *East Orange, supra,* or *N. J. Turnpike Auth. v. Washington Tp.,* 137 *N. J. Super.* 543 (App. Div. 1976), are applicable to this matter. The particular parties with which the court had to deal with in

each case was an authority of the State, the New Jersey Highway Authority and the New Jersey Turnpike Authority, respectively.

Thus, it is clear that such conflicts in powers, functions and internal operations clearly demonstrate that it was not the intention of the Legislature to include the Union County Park Commission within the definition of "state agency" or "an authority created by the State."

### III

■ Assuming, *arguendo,* that *N. J. S. A.* 54:4–3.3a includes counties within the meaning of state "agency" or "authority," the statute itself states that in cases of conflict with the provisions of another act "providing for acquisition of real property by the State, a state agency or an authority created by the State," the latter shall control. *N. J. S. A.* 54:4–3.3f. Such an act exists, and one of its provisions specifically confers upon the county park commissions the power to acquire real estate and hold it free of "all taxes, assessments and municipal liens." *N. J. S. A.* 40:37–101, *supra.* Thus, *N. J. S. A.* 54:4–3.3f confers the controlling law position upon *N. J. S. A.* 40:37–101, and the Union County Park Commission maintains its tax exempt status.

Absent a finding that *N. J. S. A.* 54:4–3.3f intended *N. J. S. A.* 40:37–101 to supersede *N. J. S. A.* 54:4–3.3a, general rules of statutory interpretation should still exempt the Union County Park Commission from real estate taxation. It has been established in this jurisdiction, that in cases where two statutes on the same subject matter are in conflict, the statute which deals specifically with the subject shall prevail over the more general statute. *East Orange, supra; Wittie Elec. Co., Inc. v. New Jersey,* 139 *N. J. Super.* 529, 354 *A.* 2d 659 (App. Div. 1976); *Red Bank Bd. of Ed. v. Warrington,* 138 *N. J. Super.* 564, 351 *A.* 2d 778 (App. Div. 1976); *Kingsley v. West Outdoor Adv. Co.,* 55

*N. J.* 336, 262 *A.* 2d 193 (1970); *Ippolito v. Mayor of Hoboken*, 60 *N. J. Super.* 477, 159 *A.* 2d 425 (App. Div. 1960).

In the instant case such conflict exists between the specific exemption of *N. J. S. A.* 40:37–101 and the general taxation of land acquired by the state, the agencies or authorities in *N. J. S. A.* 54:4–3.3a *et seq.*

Furthermore, the Legislature is presumed to have been aware of the prior legislation when it enacted *N. J. S. A.* 54:4–3.3a and 54:4–3.3b; *Brewer v. Porch*, 53 *N. J.* 167, 174 (1969), and is presumed to have been aware of the regular, consistent and uniform application of *N. J. S. A.* 40:37–101. In these circumstances there is every reason to indulge the presumption against implied repealer in the search for legislative intent. *Brewer, supra* 53 *N. J.* at 173; *Goff v. Hunt*, 6 *N. J.* 600, 606 (1951). Repeals by implication are not favored. In the absence of an express repealer the legislative intent to effect such a repealer must be clear. See *Am. Fed. of State, Cty. & Mun. Employees v. Hudson Cty. Welfare Bd.*, 141 *N. J. Super.* 25 (Ch. Div. 1976).

There was an absence of an express repealer in these statutes and the legislative intent to effect such a repealer is not clear.

Therefore, it is clear that the Legislature, in enacting *N. J. S. A.* 54:4–3.3a and *N. J. S. A.* 54:4–3.3b, was presumed to be aware of *N. J. S. A.* 40:37–101 and there was no express repealer of the same and there was no clear legislative intent to repeal the same by implication. Furthermore, since *N. J. S. A.* 40:37–101 is a more specific statute and singles out real property owned by a county park commission, it must supercede the general taxation provisions of *N. J. S. A.* 54:4–3.3a and *N. J. S. A.* 54:4–3.3b.

Therefore, for the reasons set out above it is the opinion of this court that defendants Union County Park Commission and Union County are not liable for any taxes on the land in question.